## JENNINGS and another *against* GRATZ.

Though the seller is answerable to the buyer that the article shall be in specie the thing for which it was sold, yet if there be only a partial adulteration which does not destroy the distinctive character of the thing, the buyer is bound by the bargain. And in doubtful cases the test *seems* to be, that the article shall be merchantable under the denomination affixed to it by the seller.

THIS cause was tried before TOD. J. at *Nisi Prius*, on the 24th of *November*, 1829, when a verdict was given for the plaintiffs for two thousand one hundred and forty-four dollars and twenty three cents. It now came before the court on a rule to show cause why the verdict should not be set aside, obtained by the counsel for the defendant.

It appeared that the plaintiffs, who were auctioneers, on the 13th of *April*, 1825, exposed to sale at their own auction store a quantity of teas. They were described in a catalogue, printed and distributed previously to the sale, as teas of various descriptions, and among others a large proportion of them was called " Young Hyson Tea."

The defendant became the purchaser of one hundred and six chests, for nine thousand two hundred and thirty dollars. He discovered immediately afterwards, that seventy-five chests were spurious or counterfeit, and declined receiving them: always offering however, to receive the thirty-one chests which were genuine.

A correspondence took place between the parties in the course of which the defendant wrote to the plaintiffs, that he understood they were previously to the sale, preparing to prosecute a claim on the *Chinese* merchants, for the deception practised on the supercargo in this article. The plaintiffs in replying, did not explain what subsequently appeared to be the fact, that they were pursuing a claim for breach of contract and not fraud.

The whole of the one hundred and six chests were sold by default on the 4th of *May*, 1825, and this suit was brought to recover the difference of price between the two sales.

The defendant alleged that the article contracted for was not the article sold, and offered to be delivered, but a substitute, different in its nature, and deleterious to health, and that therefore he was not bound to receive it; and especially that the plaintiffs confirmed him in the belief that it was not of a character that he ought to receive; as they permitted him to remain in the belief that they had been deceived in the purchase, and sold to him knowing and concealing the defects, while it was their duty in a correspondence voluntaly carried on by them, to correct the error before they resorted to the measure of a second sale.

Much evidence was given on both sides, as to the matters in con-

troversy, which it would be useless to state, as the opinion of the court makes the question of law upon which the cause was decided, sufficiently clear without it.

*J. R. Ingersoll* and *Chauncey* in support of the motion for a new trial.

*Binney* and *Sergeant* contra.

PER CURIAM.—In *Borrekins* v. *Bevan,* it was determined at the last term, that the seller is not answerable for the quality of an article that has been inspected and received by the buyer, provided it be, in specie, the thing for which it has been sold.   In the case at bar, the teas were proved to be adulterated with certain leaves, which, it is believed, do not belong to the tea family.   But it was also shown, that no teas of the same denomination, are entirely free from adulteration by admixture of these same leaves; and if a small degree of adulteration were permitted to affect the question of specific character, there would seldom be a binding sale.   Wines are constantly adulterated with brandy ; in fact, it is in some degree a constituent part of the finest Madeira ; and brandy itself passes in the market, although notoriously adulterated with alcohol in a cheaper form. Drugs, chemicals, paints, dye-stuffs, and a countless number of other commodities, are constantly purchased by dealers or consumers, with full knowledge that they are not entirely free from admixture.   The pigment called white lead, is frequently purchased by house-painters when they are apprised that it contains a portion of Spanish whiting, which is not supposed to affect the denomination of the article, but its quality and price.   Adulteration may, however, be carried so far as to destroy the distinctive character of the thing altogether ; and in doubtful cases there is perhaps no practical test but that of its being merchantable under the denomination affixed to it by the seller.   The application of this test to the case at bar, produces a result decisively unfavourable to the defendant.   The teas were re-sold at prices not greatly reduced, to dealers, although put on their guard, it may be presumed, by the defendant's repudiation of the article. As to the specific character of the teas, then, the defendant was not deceived, however mistaken he may have been as to their quality ; and that no fact was withheld, which it was proper for him to know, we are fully satisfied from the evidence.   There is therefore no reason to disturb the verdict.

Rule discharged.