The judgment is affirmed.

---

## F. B. FOGEL & CO. v. J. S. BRUBAKER.

ERROR TO THE COURT OF COMMON PLEAS OF LANCASTER COUNTY.

Argued May 16, 1888—Decided October 1, 1888.

1. In executory contracts for the sale of personalty, there is a warranty implied as part of the contract, that the goods shall be of the kind ordered, and of merchantable quality.

2. In such sales, if the goods be not of such kind and quality, the buyer is under no obligation to accept them and sue on the warranty, but may refuse acceptance and give notice.

Statement of Facts.

3. Though a delivery of goods ordered, to a carrier, is for many purposes a constructive delivery to the buyer, yet the obligation of the latter to accept or refuse arises only upon actual delivery.

4. The buyer having the right to rely upon the good faith of the seller, it is not his duty to go to the place of delivery to the carrier, in order to inspect the goods before shipment.

5. If the goods on reaching their destination, are not such as are required by the contract, and for this reason are refused by the buyer, the seller has no more right to recover from the buyer the expenses of shipment, than the purchase money.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 311 January Term 1888, Sup. Ct.; court below, No. 57 October Term 1885, C. P.

On October 19, 1885, an appeal was filed by the defendants from the judgment of a justice of the peace in favor of J. S. Brubaker against F. B. and R. J. Fogel, trading as F. B. Fogel & Co., for $195.43. The narr printed in the paper books (whether it was the original filed on August 7, 1886, or an amended narr filed on October 24, 1887, was not indicated), complained:

For that whereas the said defendants on the 22d day of August, A. D. 1884, at the county aforesaid, had bought of the said plaintiff 598 40-60 bushels of wheat to be delivered in the cars at Millway Station, on the Columbia and Reading railroad, in said county, as soon thereafter as possible, and to be shipped to Ashland, Pennsylvania, at and for the sum of one dollar for each bushel thereof. And the said plaintiff, then and there, to wit, the same day and year, at the county aforesaid, upon himself did assume, and to the said defendants then and there faithfully promised to deliver and have said wheat shipped as aforesaid, and in compliance with said promise on the 25th day of August, A. D. 1884, did deliver and ship to said defendants to Ashland, Pennsylvania, said 598 40-60 bushels of wheat; the aforesaid defendants then and there, to wit, the same day and year first aforesaid mentioned, upon themselves did assume, and to the said plaintiff then and there faithfully promised to pay him the sum of one dollar for each bushel of wheat when the same was delivered as aforesaid. Nevertheless, etc. The defendants pleaded, payment, payment with leave, etc.

At the trial on December 7, 1887, the following facts appeared :

J. S. Brubaker, the plaintiff, was a miller engaged in buying and selling grain at Millway, Lancaster county, and on August 17, 1884, made a parol contract to sell to Fogel & Co., doing business at Allentown, Pa., " 1 car-load strictly No. 1 long-berry red wheat, at $1.00 per bushel on track at Millway." On August 20th, the defendants wrote directing the plaintiff to load as near 600 bushels as possible and ship to Ashland, Pa. On August 25th, the wheat was shipped to Lessig & Co., Ash-land, and billed to the defendants, upon whom the plaintiff drew at sight for the value, bill of lading and freight bill attached to draft. On August 26th, the defendants wrote to plaintiff that the car of wheat was at Ashland, but it was musty and their customer refused to take it : " We cannot pay your draft, and cannot pay you full price for same." The plaint-iff replied, August 27th, " I can take an oath that the wheat was all sound when loaded, with the exception of about 100 bushels that was at sweating, and probably gave it a little smell on handling it ; that all came on top, it will be better below." On August 28th, the defendants wrote plaintiff, saying inter alia : " When we received word from our customer that the car of wheat was out of condition and was damp, we at once have sent our agent to see same and advise him to compromise with our customer, for we knew that if he did not receive it, we would have to lose heavy, because it would have to be reshipped to some other point at a local rate, and would have to sell it for musty wheat, and being wheat could be bought for much less money we tried to get out the best way possible. We therefore make a deduction of five cents per bushel or $29.90. Now you can make another draft on us for the amount of your bill, less the above amount, $29.90, and attach a receipt in full for car No. 9889. . . . . However, we have made an arrange-ment with our customer that in case you should want the wheat that he would reload it for you and then leave it for your disposal. You can therefore see at once that he was not anxious to have it at the deduction made him. If you want the wheat answer at once and we will advise our customer to load the same wheat ; he has it all in one bin and he is willing to reload it, if we cannot settle with you as per statement. . . .

The plaintiff then drew upon the defendants for the value of the wheat at 95 cents per bushel, and this draft being unpaid, on September 6th, he wrote defendants: "Return that wheat immediately and have it billed as low as you can for refused goods. If the wheat is in bad condition, then we will see who will be caught." The wheat was returned to plaintiff who subsequently sold it at 88 cents, and in this suit claimed to recover the difference between the value at that rate and the value at 95 cents, together with the freight between Millway and Ashland and return, expenses of loading, waste, protest charges paid, etc.

Evidence was given upon both sides as to the condition of the wheat when shipped to Ashland.

The court, LIVINGSTON, P. J., charged the jury as follows:

The testimony of Mr. Brubaker, as well as Mr. Fogel, is that Mr. Brubaker received an order from Mr. Fogel for Fogel & Co., to furnish and deliver to them one car load strictly No. 1 long-berry red wheat, sound, on the track at Millway, which order he agreed to fill, for which wheat they were to pay him $1.00 per bushel. In pursuance of this order and his undertaking, Mr. Brubaker did furnish and place in the car on the track at Millway, Lancaster county, 598 40–60 bushels longberry red wheat, and immediately notified defendants that he had done so, and drew on them for the price, and they received the draft. They refused to accept it, and notified Mr. Brubaker that the wheat was not what he had contracted to furnish, and they refused to accept it.

With reference to contracts of this character: If a man buys an article for a particular purpose made known to the seller at the time of the contract, and relies on the skill and judgment of the seller to supply what is wanted, there is an implied warranty that the thing sold will be fit for the desired purpose. Where an order is given, and the party giving the order does not see or examine the thing ordered, the party accepting the order is bound to furnish the article ordered, or the party to whom it is sent is under no obligation to receive it.

When a vendor sells an article by a particular description, it is a condition precedent to his right of action that the thing which he offers to deliver, or has delivered, should answer the

Charge of Court below.

description. If this condition be not performed the purchaser is entitled to reject the article, or if he has paid for it, he may recover back the price as money had and received to his use. The right to repudiate the purchase for non-conformity of the article delivered, to the description under which it was sold, is universally conceded, and it comports with sound legal principles, to treat such engagements as conditions in order to afford a purchaser a more enlarged remedy by rescission, than he would have on a simple warranty; and, as an inspection of the goods is necessary to enable the buyer to ascertain whether they answer the description by which they were sold, it follows that a seller is bound to give the buyer an opportunity to make such inspection, and an acceptance by a buyer for that purpose will not be a waiver of his right to reject, if the goods do not answer the description.

The performance of a contract must be in the mode the contract itself specifies. What did Brubaker agree to do? He agreed to furnish and deliver to Fogel & Co. one car load strictly No. 1 long-berry sound red wheat, on the track at Millway, as Fogel says; as he himself says, to furnish and deliver one car load No. 1 long-berry red wheat, long-berry red, sound wheat, No. 1 at $1.00 per bushel. Now having agreed to furnish this kind and description of wheat, he was bound to do so to enable him to demand and recover the price. The terms of the contract cast the burden of the selection of the wheat of the kind and character ordered on Mr. Brubaker. If he failed to select and deliver such wheat, Fogel was neither bound to accept nor pay for it, at any price; they could rescind the contract and refuse to receive it, and no recovery could be had against them. They refused to remit at $1.00.

They did rescind this first contract, and the rescission appears to have been accepted as final by Mr. Brubaker. Did they, after so doing, make any other contract with Mr. Brubaker, as he contends they did? You have heard the evidence, and will say whether or not they did, at 95 cents per bushel, after they had inspected it. If they did that, they would be liable and bound to pay that sum: if they refused to do so, and returned the wheat, they would be liable for the difference in price between that sum and the sum it was fairly sold for in market, at the time of the refusal. They deny that they

bought it for 95 cents, and say they made no such contract with him. There seems to be no doubt that they directed Brubaker to draw on them at 95 cents, and that he did so; that they refused to pay that draft, and after this refusal he ordered them to send the wheat to Millway, which they did. It will be for you to say from all the evidence, whether or not they, after refusing at $1.00, bought it at 95 cents, and refused to pay for it. So much for the claim for difference in price. Unless you find they bought it, you cannot allow him for the difference in price, $41.91. Now as to freight.

[Mr. Brubaker, as all the testimony as to the contract shows, was to deliver the wheat to the purchaser on the track at Millway, in Lancaster county, not at any other place; and where the delivery was to be made, the examination and acceptance or refusal should have been made. The law would not permit the purchaser to take it to Allentown or Ashland, or any other remote place for examination and acceptance or refusal; it would not warrant them in so doing, and thus compel Mr. Brubaker to pay the freight for removing it to Ashland and returning it to Millway after rejection. The delivery on the track at Millway was all they could require him under his contract to do; the freight to and from any other place to which they took it, the law would require them to pay. So that, in this case, if they removed it, as the evidence shows they did, they are bound to pay the freight and expense caused by so doing.] [1]

You will recollect all the testimony. I shall not repeat it. You will consider it all in making up your verdict.

As to the charge for loading and unloading, if you find the wheat was not of the kind and description sold, the plaintiff would not be entitled to recover anything for loading or unloading it, or for hauling it, or for any waste which occurred in so loading or unloading it or otherwise. After it was returned, of course, he would be entitled to nothing for loading it the first time, his contract bound him to do that. In such case, the plaintiff would not be entitled to recover in this action more than the amount of freight he paid for removing the wheat from and returning it to Millway, with interest from the time of first payment. . . . .

The jury returned a verdict in favor of the plaintiff for $130. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendants took this writ and assigned as error:

1. The part of the charge embraced in [ ]¹

*Mr. W. U. Hensel* (with him *Mr. J. Hay Brown*), for the plaintiffs in error:

1. The engagement of the seller was to deliver a car-load of sound No. 1 wheat, instead of which he furnished unsound wheat, and, knowing it to be such, shipped, not to the vendees, but upon their order to their customer at Ashland. The purchasers were not bound to come on to Millway, and inspect the goods in bulk there; they had a right to rely on the good faith of the vendor to ship what they had bought: Blackb. on Sales, 22, 23; 1 Benj. on Sales, 4th Am. ed., § 140.

2. A sale or offer for sale, by the buyer, of goods which he has not yet examined, will not amount to an acceptance, if on examination he object to the goods: Jones v. Mechanics Bank, 29 Md. 289, 297 (96 Am. Dec. 533). Delivery alone does not bind the purchaser; there must be an acceptance; and there is no acceptance until the buyer has time to make an inspection: 1 Benj. on Sales, 145, 148; and so long as there is no delivery of the article ordered, and in the condition agreed upon, there is no delivery at all.

3. In every case where a buyer has been imposed upon by the fraud of the vendor, he has a right to repudiate the contract, and impose upon the vendor all the cost and consequences of his own wrong-doing; under such circumstances there is no delivery: 1 Benj. on Sales, 4th Am. ed., §§ 674, 1040. The shipment by the seller of goods not in merchantable condition is at his own peril. In a sale of goods by description, where the buyer has not inspected the goods, there is, in addition to the condition precedent that the goods shall answer the description, an implied warranty that they shall be salable or merchantable: 2 Benj. on Sales, 4th Am. ed., § 983; Rodgers v. Phillips, 40 N. Y. 523; Caulkins v. Hellman, 47 N. Y. 452.

*Mr. H. C. Brubaker*, for the defendant in error:

The question as to the quality or soundness of the wheat, put in issue by the defendants, was a question of fact decided by the verdict of the jury, evidently to the satisfaction of the defendants, as no complaint is made as to that branch of the case. We care not then, whether the conduct of the buyer was an acceptance of the wheat or not. Assuming that it was not an acceptance of the goods contracted for, the seller would have a right of action on the buyer's failure to accept. This was not disputed at the trial, nor was it disputed that the seller, after notice to the buyer, on his default, that the goods would be resold, had the right to sell them as the agent of the buyer and recover the difference between the contract price and the price at the re-sale, and all the expenses incident thereto.

OPINION, MR. JUSTICE WILLIAMS :

Sales of personal property are divisible, with reference to the question presented in this case, into two classes, executed and executory. In the first of these, the articles are ordinarily sold upon inspection and the sale is completed by a delivery of the property, made at the time of sale. To this class of sales the rule of caveat emptor is properly applicable. If a warranty is desired by the purchaser he must stipulate for it before the sale is completed, otherwise he will be held to have bought upon his own judgment of the quality and value of the thing purchased. In the second class, the sales are made by sample or by description, the goods not being seen by the purchaser until they have been selected and forwarded by the seller in pursuance of the previous contract or order from his customer. The rule in these cases is not caveat emptor, but caveat venditor, for the duty of selecting and sending the article ordered by description or from sample is on the seller. The buyer is dependent on his good faith in the premises. If the article selected and forwarded by the seller is not of the kind ordered, or if, being of the kind ordered, it is not merchantable in quality, the buyer may refuse to accept it and give notice to the seller.

There is no implied warranty in executed sales except that of title ; nor is there in any case, where the sale is made upon inspection by the buyer. In executory sales the seller warrants

that the article shall be of the kind ordered, and merchantable in quality. This is the rule laid down in Borrekins v. Bevan, 3 R. 23, and followed through a long line of cases down to Selser v. Roberts, 105 Pa. 242. The warranty in these cases is part of the contract of sale, and the purchaser is under no obligation to take the article and sue on the warranty, but may refuse to accept it as not in compliance with the contract. As was said by this court in Dailey v. Green, 15 Pa. 126, " When the contract is executory, as it always is when a particular article is ordered without being seen, from one who undertakes it shall be of a given quality or description, and the thing sent as such is never completely accepted, the buyer is not bound to keep it, or pay for the article on any terms, though no fraud was intended by the vendor."

It is true that a delivery to the carrier is for many purposes a delivery to the purchaser, but such delivery is constructive merely. The obligation to accept or reject the article arises, however, only upon an actual delivery. It is when the articles come under the observation of the purchaser and he is able to see whether they are such as he has ordered, that he is bound to elect whether to accept them or not. It is not his duty to go to the point where delivery is made to the carrier, to inspect the articles before their shipment; for he has a right to rely on the good faith of the seller who has undertaken to fill his order, according to its terms, and ship to him by the ordinary modes of transportation, and when the articles reach him is the first time at which examination is practicable, and is the time contemplated by the contract. If the articles upon reaching their destination are not found to be such as the contract calls for, the seller has not performed on his part, and has no right to ask performance to any extent from his vendee. It was his own folly or fraud to ship an article not ordered, and he has no claim upon his vendee for freight, any more than he has for the purchase money of such an article. If the vendee has just ground for refusing to accept the performance offered, it is very clear that he is under no other obligation to his vendor than that of giving notice promptly of his refusal. The articles are then at the risk of the shipper and subject to the carrier's lien for freight.

These principles dispose of the case at bar and make a rever-

sal of the judgment of the court below necessary. Fogel & Co. ordered from Brubaker 600 bushels No. 1 long-berry red wheat, at one dollar per bushel on board cars at Millway, which was the railway station at which Brubaker's store-house was located. It was to be shipped to Ashland, Pa. When it reached Ash-land, the mill owners to whom Fogel & Co. had sold it, examined it and refused to accept it because it was musty. Brubaker was at once notified, and after some correspondence the wheat was returned to him at Millway as unmerchantable. He afterwards made sale of the wheat at eighty-eight cents, and brought this suit against Fogel & Co. to recover the differ-ence in price and the freight and expenses incurred in the shipment of the wheat to Ashland and back again, and the protest fees upon his drafts on the defendants for the price.

The learned judge instructed the jury upon the trial as fol-lows: "Mr. Brubaker, as all the testimony as to the contract shows, was to deliver the wheat to the purchaser on the track at Millway, not at any other place; and where the delivery was to be made the examination and acceptance or refusal should have been made." This instruction put the construc-tive delivery to the purchaser arising from the delivery to the carrier, in the place of the actual delivery to the buyer at the point of destination, and was clearly wrong. The instruction complained of in the second assignment of error is the logical result of that just considered. The court said, "The law would not permit the purchasers to take it to Allentown or Ashland, or any other remote place for examination and accept-ance or refusal. . . . . The delivery on the track at Millway was all they could require him under his contract to do; the freight to and from any other place to which they took it, the law would require them to pay."

The vice of this instruction was, also, that it put the delivery to the carrier for the purpose of conveyance, in the place of the actual delivery to the purchaser. If, after the wheat reached Ashland, the point of actual delivery, the defendants had transported it to some other place, such transportation, not being within the contemplation of the contract, would have been at the cost of him who ordered it, but the defendant's order was for wheat to be sent to him at Ashland. If the seller sent something not ordered and which the buyer refused to

accept, it imposed no more obligation upon the buyer than if he had sent nothing. The seller failed to perform his contract. Whatever expenses were incurred in an ineffectual effort at performance he must pay. If the wheat had been injured on the journey an entirely different question would be presented, but the evidence shows that Brubaker, having loaded 500 bushels of good wheat into the car, put one hundred bushels in to fill it up, which had begun to heat and was musty. The condition of the wheat was not changed on the journey. The allegation was that the whole was rendered unmerchantable by the admixture. The question of performance was therefore properly raised, and the jury should have been instructed that if the wheat was not merchantable as "No. 1, long-berry red wheat," the defendants had the right to reject it; and, the plaintiff having failed to perform the contract on his part, had no right of action against the defendants for the freight or other expenses incurred by him.

> Judgment reversed, and venire facias de novo awarded.