STRUTHERS-ZIEGLER COOPERAGE CO. *v.* FARMERS MANFG. CO.

1. SALES—TITLE PASSING ON DELIVERY F. O. B. CONDITIONAL—RIGHT OF INSPECTION AT DESTINATION.

    The title which passes from seller to buyer at the time of the delivery of goods f. o. b. at a designated place is a conditional one, subject to the right of inspection and rejection at the point of destination.[1]

2. SAME — RIGHT OF INSPECTION CONTROLLED BY INTENTION OF PARTIES.

    General rules as to the time and place of inspection, where the stipulations of the contract do not provide for it, are not invariable because they are always subordinate to the intention of the parties.[2]

3. SAME—RIGHT OF INSPECTION AT DESTINATION.

    Where there was nothing in the contract to the contrary, the buyer of cooperage supplies had the right of inspection at the point of destination, under a contract calling for delivery f. o. b. Norfolk, with 30 days' time on each shipment.[3]

4. SAME—BREACH OF CONTRACT—REPLACEMENT IN REASONABLE TIME.

    In an action by the buyer for damages for the breach of a contract for the sale of cooperage stock, the time consumed by plaintiff in replacing the material cannot be said to be unreasonable, as a matter of law, in view of the condition of the market, the scarcity of the material, the distance of plaintiff from the market, and other matters appearing in the testimony.[4]

5. SAME—MINIMIZING DAMAGES—REASONABLE DILIGENCE.

    Whether plaintiff, in buying material for replacement, and in order to minimize its damages, knew or by reasonable diligence should have known, of a certain firm's selling said material at a less price than paid by plaintiff, *held*, under the evidence, a question of fact for the jury.[5]

[1]Sales, 35 Cyc. p. 307; [2]Id., 35 Cyc. pp. 226 (Anno), 227 (Anno); [3]Id., 35 Cyc. pp. 225, 226; [4]Id., 35 Cyc. p. 239; [5]Damages, 17 C. J. § 361.

On passing of title by delivery f. o. b., see notes in 62 L. R. A. 798; 33 L. R. A. (N. S.) 54.

As to what amounts to delivery f. o. b., see note in 16 A. L. R. 597.

Error to Saginaw; Browne (Clarence M.), J.    Submitted October 13, 1925.    (Docket No. 53.)    Decided December 22, 1925.

Assumpsit by the Struthers-Ziegler Cooperage Company against the Farmers Manufacturing Company for breach of a contract of sale.    Judgment for plaintiff.    Defendant brings error.    Affirmed.

*Humphrey, Grant & Henry*, for appellant.

*Cook & Cook* (*Fred G. Dewey*, of counsel), for appellee.

McDONALD, C. J.    This action was brought to recover damages for breach of contract.    The plaintiff is a wholesale dealer in cooperage stock.    It is a Michigan corporation with offices in Detroit.    The defendant is a Virginia corporation engaged in the business of manufacturing cooperage stock at Norfolk, Virginia, and elsewhere.    Between January 2, 1923, and February 3, 1923, the parties entered into four separate contracts for the sale to the plaintiff of a quantity of staves and heading, aggregating 21 car loads.    Five cars were shipped, two of which the plaintiff accepted and three of which it rejected on the claim that in quality they did not conform to the contract.    The cars rejected were shipped on the plaintiff's order to customers in Maryland and West Virginia.    When they reached their destination they were inspected, the defendant was notified of their rejection and requested to replace them with such material as was called for by the contract.    The defendant refused to replace them or to make any other shipments unless the plaintiff would accept delivery at Norfolk, Virginia, and make inspection there.    The plaintiff insisted on its right to inspection at the point of destination.    No further shipments were made, and the rejected goods were not replaced.    The

plaintiff bought elsewhere and then began this suit to recover its damages. At the close of the plaintiff's case and again at the close of all the proofs, the defendant moved for a directed verdict on the ground that there was no liability on its part as a matter of law. Disposition of these motions was reserved under the statute and the case was submitted to the jury, which returned a verdict for the plaintiff in the sum of $4,617.23. A judgment notwithstanding the verdict was denied. The defendant moved for a new trial, to the denial of which it duly excepted. Defendant brings error.

It is first contended that the circuit judge erred in the construction which he placed upon the contracts. The defendant claimed that the goods were sold f. o. b. Norfolk, that Norfolk was the place of delivery, of inspection, and acceptance by the plaintiff, and that when it made or tendered delivery at Norfolk it had fully performed its duty under the contract. It was the plaintiff's claim that it had a right to inspect the goods at the point of destination and to reject them there if they were of inferior quality; that f. o. b. Norfolk was used merely to designate the party by whom the freight was to be paid and not the place of delivery and acceptance. The court ruled in accordance with the plaintiff's contention and this ruling presents the first question for our consideration.

The goods specified in the contract were to be shipped by the defendant as plaintiff ordered to its customers in various parts of the country. They were goods which the defendant was to manufacture. The contracts required them to be of a certain quality, but did not specify as to the time or place or right of inspection. Under such circumstances the defendant contends that the contract being for shipment f. o. b. Norfolk, acceptance and inspection must be made at Norfolk and not at the point of destination.

Of the cases cited in support of this contention, the one most in point is *Lawder & Sons Co.* v. *Mackie Grocery Co.,* 97 Md. 1 (54 Atl. 634, 62 L. R. A. 795). In that case the buyer, who resided in New Orleans, sued the seller in Baltimore for breach of contract in the sale of 700 cases of canned tomatoes. The contract provided that the tomatoes be delivered f. o. b. Baltimore, and that the terms should be cash. It was the claim of the buyer that he had a right under the contract to inspect the goods and pay for them when received at the point of destination. Of this the court said:

"If it be conceded that it had such right, as it may be, the further question arises as to where, under this contract, it could be exercised. The mere fact that the buyer has the right to inspect the goods before acceptance does not necessarily mean that the inspection is to be made at the residence or place of business of the buyer. He might inspect at the seller's place of business, but, if the contract provides for delivery at a particular place, he must accept or reject at that place, unless otherwise provided for in the contract."   *   *   *

The controlling fact in that case as to the place of inspection was that the terms were cash. It was expressly provided in the contract that delivery should be made f. o. b. Baltimore, terms cash. This meant that the goods were to be paid for when delivered to the common carrier at Baltimore. That he should pay cash when delivered at Baltimore was inconsistent with the buyer's claim that he had a right to inspect at any other time or place. The reasoning of the court in that case would not apply to a case where the terms were not cash. So that the rule there enunciated, which we have quoted above, was evidently not intended as a general rule, but was to apply only to cases where it could be inferred from some provision in the contract that the parties in-

tended that inspection should be at the place of delivery.    In that case the court further said:

"If they determine that by their contract it must control, and if it is silent as to inspection, but is as clear as this is as to delivery, any inspection that is desired before payment must be made before or at the time of delivery, when the terms are cash."

In the instant case the goods were not sold for cash, but the plaintiff had 30 days' time on each shipment.

Many other cases are cited in support of the general rule that if the sale is made for delivery f. o. b. at a designated place, and the seller there delivers the goods free of expense to the buyer, the title at once passes to him.    No one will question this rule.    It is conclusive on the question of delivery.    But delivery and the passing of title at the point of shipment do not preclude the buyer from inspecting and rejecting at the point of destination, if the goods when delivered are not such as are stipulated in the contract.    It has uniformly been held that, under such circumstances, as between the seller and the buyer, the title which passes is a conditional title subject to the right of inspection and rejection at the point of destination.

"It is the general rule that where goods are ordered of a specific quality, which the seller undertakes to deliver to a carrier to be forwarded to the buyer at a distant place, the right of inspection, in the absence of any specific provision in the contract, continues until the goods are received and accepted at their ultimate destination; in such a case the carrier is not the agent of the buyer to accept the goods as corresponding with the contract, although he may be his agent to receive and transport them."    23 R. C. L. p. 1433, and cases cited.

In *Kuppenheimer* v. *Wertheimer*, 107 Mich. 77 (61 Am. St. Rep. 317), it was said:

"The right to inspect before acceptance always

exists, and a purchaser cannot be required to inspect at the shipping point, but is entitled to a reasonable opportunity after the arrival of the goods.   *Fogel v. Brubaker,* 122 Pa. St. 7 (15 Atl. 692) ; 2 Benj. Sales (Corbin's Ed.), §§ 910, 966; *Erwin v. Harris,* 87 Ga. 333 (13 S. E. 513).   If the goods are not up to the sample, the right to refuse them exists, which is, in effect, a rescission.   The title passes upon delivery to the carrier, subject to this right, of which the purchaser may avail himself or not."

General rules as to the time and place of inspection, where the stipulations of the contract do not provide for it, are not invariable because they are always subordinate to the intention of the parties.   But there is nothing in the contracts in this case indicating an intention inconsistent with the buyer's right of inspection at the point of destination.   In this view of the facts and the law, we hold that it was the plaintiff's right under these contracts to inspect the goods at the point of destination and to reject them if they were of inferior quality.

As a further reason for the reversal of the judgment, the defendant contends that the court erred in his instructions to the jury as to the time when replacement should have been made.   The court was of the opinion that the contract was breached by the defendant on the 2d of March, 1923, and he so instructed the jury.   It is admitted that no attempt was made by the plaintiff to replace the material from other sources until after March 28, 1923, and that it was not wholly replaced until some time in May. The court left to the jury the question of plaintiff's good faith and diligence in seeking to replace the material within a reasonable time.   Counsel for the defendant insist that under the circumstances the plaintiff did not attempt to minimize its damages promptly and did not replace the material within a reasonable time, and that the court should have so

instructed the jury, as a matter of law. We would be inclined to agree with counsel were it not for the fact that the court was mistaken as to the time when the contract was breached. It was not until March 28th that the plaintiff knew it would be necessary for it to buy the material elsewhere. But it cannot be said, as a matter of law, that the time consumed in replacing the material was unreasonable. The condition of the market, the scarcity of the material, the distance of the plaintiff from the market, and other matters appearing in the testimony, made the question one for the jury.

Error is also assigned on the refusal of the court to grant a new trial. In regard to this, counsel in their brief say:

"We now urge that the verdict was against the overwhelming weight of the evidence in respect to the diligence required of and exercised by plaintiff under its duty to mitigate the damages, if any, sustained by it and in respect to the amount of the verdict."

Mr. Ziegler, secretary of the plaintiff company, testified that they buy their material wherever it is manufactured, that after the defendant finally refused to perform the contract, he made every reasonable effort to replace the material from the district where it was manufactured, that he did not inquire of the National Manufacturing Company of Detroit because he knew it had no mills in the districts where material of the nature contracted for was manufactured. Mr. Hartman, who is connected with the National Manufacturing Company, and who was a witness for the defendant, testified that his company handled this material and could have sold it to the plaintiff for replacement at a less price than the plaintiff claims it was compelled to pay. If his testimony is true and the plaintiff knew that he was handling this material, or by reasonable diligence could have learned of it,

it must follow that the verdict is excessive and against the great weight of the evidence.   For if the plaintiff could have reduced its loss to the extent claimed by Mr. Hartman, the verdict to that extent is excessive. The plaintiff should not be allowed to recover for damages which it could have prevented by buying material from Hartman.   But in minimizing its damages the law requires of the plaintiff only that it use such means and diligence as a reasonable and prudent man would employ.   Whether Mr. Ziegler, acting for the plaintiff, knew or by the use of reasonable diligence could have learned, that Hartman was selling this material, was a question of fact for the jury to determine.   We see no reason for disturbing their verdict in this respect.

The judgment is affirmed, with costs to the plaintiff.

CLARK, BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.