HOSTLER COAL & LUMBER COMPANY, Appellant, v. B. R. STUFF et al., Appellees.

May 15, 1928.

*Trewin, Simmons & Trewin* and *B. D. Silliman,* for appellant.

*Crissman & Linville,* for appellees.

De Graff, J.—A preliminary question on this appeal should first be considered and determined. This question arises on the contention of appellant that the cause is triable *de novo* in this court, by reason of a stipulation, to wit:

"By agreement jury waived and case to be tried to the court. By agreement the case to be tried in the same manner as an equity cause."

I. The action was commenced in law, and is predicated on fraudulent representations. The phrase "in the same manner" is significant. This language, in the light of the record, is not equivalent to the words "as an equity cause." It is apparent that the trial court did not so view it, but treated the stipulation as granting to the trial court the right to reserve its rulings on objections, instead of making its rulings immediately upon objections entered. There is no equitable issue involved. There was no transfer of the case to the equity calendar, nor was any motion to that effect presented or entertained. The final entry of judgment granted to the plaintiff (appellant) ten days to file excep-

tions and motion for a new trial. This contemplated that the action was one at law, by ordinary proceedings.

In equity actions triable *de novo* on appeal, no bill of exceptions is necessary. Section 11539, Code of 1927. The same rule applies to a motion for a new trial. In *Todd v. State Bank,* 182 Iowa 276, it is said (page 295):

"If either party thinks that the case should be docketed for trial in equity, instead of at law, or vice versa, it is his privilege to move for such order. If he fails so to do, no exception thereto taken on appeal is entitled to consideration."

We hold that the instant case was, at all times, in law, and it results that the finding of the court had the same effect as the verdict of a jury.

II. The defendant-vendee purchased a carload of coal, and it is alleged in the answer that the written order for said coal was procured by plaintiff from the defendants under false and  fraudulent representations made by plaintiff that Kenova Block coal "was good coal mined in the Duquoin District of Franklin County, Illinois, on which the freight rate to Cedar Rapids was $3.27; that the flat rate on coal from West Virginia was $5.52; that, had the defendants known that Kenova Block coal was not mined in the Duquoin District, and that the freight rate exceeded the freight rate of the district, the said B. R. Stuff would not have made or signed said order."

The plaintiff delivered West Virginia coal, and, upon the arrival of said coal in Cedar Rapids, it was first discovered by the defendants that the coal was West Virginia, and not Illinois, coal, and that the freight tariff was $5.52 per ton, and not $3.27 per ton for an Illinois shipment. Thereupon defendants declined and refused to accept said coal, and immediately notified the resident agent of the plaintiff at Cedar Rapids, Iowa.

The trial court found, under conflicting evidence, that the coal was not what the defendants bargained for, and that fraud had been practiced by the plaintiff in securing the order for the coal. This finding by the court had the force and effect, under the circumstances, of the verdict of a jury.

The primary legal propositions on this appeal, as presented by the appellant, may be stated as follows: Did the title to the coal pass to the consignee at the time the railroad company

 accepted the coal from the consignor for shipment? Was the refusal to accept said coal by the consignee, with due and timely notice thereof to the consignor, in legal effect a rescission of the contract pleaded by the plaintiff?

Under the Sales Law of this state, the effect of fraud, misrepresentation, or other invalidating cause continues to apply to contracts to sell and to sales of goods. Section 10002, Code of 1927. The vendee has the right to inspect the goods shipped.

"Where goods are delivered to the buyer, which he has not previously examined, he is not deemed to have accepted them unless and until he has had a reasonable opportunity of examining them for the purpose of ascertaining whether they are in conformity with the contract." Section 9976, Code of 1927.

See *Billmeyer v. Queen Mfg. Co.*, 150 Iowa 318.

"It is the general rule that, where goods are ordered of a specific quality, which the seller undertakes to deliver to a carrier to be forwarded to the buyer at a distant place, the right of inspection, in the absence of any specific provision in the contract, continues until the goods are received and accepted at their ultimate destination. In such a case, the carrier is not the agent of the buyer to accept the goods as corresponding with the contract, although he may be his agent to receive and transport them." 23 Ruling Case Law 1433.

A purchaser cannot be required to inspect at the shipping point, but is entitled to a reasonable opportunity to inspect after the arrival of the goods. The right to refuse the coal existed, and when the defendants declined and refused to accept the shipment, and gave notice of this fact to the shipper, with reasons therefor, this was, in legal effect, a rescission. It is quite uniformly held that the title which passes from seller to buyer at time of delivery of merchandise F. O. B. at a designated place is a conditional title, subject to right of inspection and rejection of merchandise at point of destination. *Struthers-Ziegler Cooperage Co. v. Farmers Mfg. Co.*, 233 Mich. 298 (206 N. W. 331); *Shapiro v. Goodman*, 236 Mich. 412 (210 N. W. 211).

Upon the discovery of the fraud, which the trial court found, as a matter of fact, to exist, the defrauded party (defendants) refused to be bound by the alleged contract. The defendants were not obligated to take possession of the coal.

They did all that was required of them to do, to wit: repudiate the delivery and give due and timely notice thereof to the vendor. A buyer is not obligated to accept merchandise of any kind or character which a shipper sees fit to deliver to a carrier for the purpose of transportation to the purchaser. In brief, the Uniform Sales Law (Chapter 435, Code of 1927) contemplates a delivery pursuant to a contract; but if there is no contract, in a legal sense (a meeting of the minds), delivery to a common carrier does not constitute a delivery, or the passing of the title to the buyer. See 13 Corpus Juris 394, with cases cited.

The Uniform Sales Law merely codifies the law of sales as it has been interpreted for many years. The judgment entered by the trial court is—*Affirmed*.

STEVENS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.