PHILADELPHIA WHITING Co. v. DETROIT WHITE LEAD WORKS.

*Contract by correspondence—Shipment of inferior goods—Damages.*

1. An undertaking to deliver the *best* quality of specified goods is fairly implied from a request for quotations of the *best*,—an answer giving quotations, but without specifying quality,—an order for a specified quantity of the *best*,—and a shipment in response.

2. The cost of the barrels or cases in which merchandise is shipped does not stand on any different footing from that of the goods, in an action for their price.

3. If one who ships poorer goods than are ordered does not notify his customer of their inferiority he must stand the reasonable and necessary expense of testing' them and then of storing them to await the vendor's orders; and these expenses may properly include insurance, freight and cartage.

4. Business correspondence from which the terms of a contract are gathered are the best evidence as to any guarantee implied therein, and if such guarantee is implied parol evidence denying it is inadmissible.

5. Where goods shipped by a vendor are of such a character that they must be used to ascertain their quality, and it turns out to be so inferior to that bargained for that the purchaser is justified in refusing to accept the goods, he cannot be charged for the quantity necessarily used in ascertaining the quality if he promptly rejects the rest on finding it out.

Error to the Superior Court of Detroit.    (Chipman, J.) June 4.—September 29.

Assumpsit.    Plaintiff brings error.    Affirmed.

*George W. Radford* for appellant.    Where purchase is of a defined and well known article, the vendor performs his part of the contract by sending that article; and it is the vendee's concern whether it answers the purpose for which he wanted to use it or not: *Ollivant v. Bayley* 5 Q. B. 288; *Chanter v. Hopkins* 4 M. & W. 399, 406; *Wright v. Hart* 18 Wend. 449; and where the vendor is only a dealer, and not a manufacturer, he could not be held liable if the goods did not answer the purpose, even if he had knowledge of the specific purpose for which they were desired: *Bartlett v. Hoppock* 34 N. Y. 118; *Carley v. Wilkins* 6 Barb. 557; *Seixas v. Woods* 2 Caines 48; *Dounce v. Dow* 64 N. Y. 411; *Swett v. Colgate* 20 Johns. 196; *Moses v. Mead* 1 Den. 378; *Gossler v. Eagle Sugar Refinery* 103 Mass. 331; as to implied warranty, see *Jones v. Just* L. R. 3 Q. B. 197; *Hargous v. Stone* 5 N. Y. 73; *Hart v. Wright* 17 Wend. 267; *Reed v. Randall* 29 N. Y. 358; *Bartlett v. Hoppock* 34 N. Y. 118; *Gaylord Mnf Co. v. Allen* 53 N. Y. 515; *Day v. Pool* 52 N. Y. 416; *White v. Miller* 71 N. Y. 119; *Clark v. Dearborn* 103 Mass. 335; 1 Smith's Leading Cases 250; 2 Kent's Com. 480; there is no implied warranty of the merchantable character of an article of which the vendor is not the manufacturer, and in regard to which the vendee has an equal opportunity for knowledge: *Hoover v. Peters* 18 Mich. 51; *Fraley v. Bispham* 10 Penn. St.

320 ; *Whitaker v. Eastwick* 75 Penn. St. 229 ; *Carson v. Baillie* 19 Penn. St. 375 ; *Hogins v. Plympton* 11 Pick. 97 ; whether or not a sale is rescinded within a reasonable time is a question of law, when there is no dispute as to the facts of rejection : *Holbrook v. Burt* 22 Pick. 546 ; *Boothby v. Scales* 27 Wis. 626 ; *Gammon v. Abrams* 53 Wis. 326 ; *Cutler v. Hurlbut* 29 Wis. 152 ; *Williams v. Porter* 41 Wis. 423 ; *Milner v. Tucker* 1 C & P. 15 ; *Barnett v. Stanton* 2 Ala. 189 ; 2 Kent's Com. 480 ; *Ward v. Reynolds* 32 Ala. 384 ; *Smith v. Love* 64 N. C. 439 ; *Wilbur v. Flood* 16 Mich. 40 ; *Hubbardston Lumber Co v. Bates* 31 Mich. 158.

*Griffin, Dickinson, Thurber & Hosmer* for appellees. . ---

SHERWOOD, J. The plaintiff is located in Philadelphia. Its business, among other things, is the sale of commercial whiting. It is not a manufacturer. The defendant is a corporation in Detroit. Its business is the manufacture of white lead, zinc, putty and similar articles. This action was brought by plaintiff to recover for three hundred barrels of commercial whiting sold to defendant. The contract for the same is in writing, and contained in several letters passed between the parties, in pursuance of which the goods were shipped to defendant on the 31st of August, and 4th and 14th of September, 1882 ; the purchase price thereof, less freight, being $530.07. The goods were received by defendant at Detroit in due time,—the first shipment of one hundred and eighty barrels on the 9th of September after the order was given. The best commercial whiting was ordered, and the plaintiff claims the best was sent, and the proofs tend to show such was the fact, and that plaintiff sold but the one quality.

The defendant commenced using the whiting as soon as it arrived, working up two barrels the first day, and from three to four barrels per day until it had used up forty-two barrels, and sold the same out to its customers, who made complaints to defendant very soon after they received the putty manufactured from the whiting. The defendant had in June previous had some of plaintiff's whiting, as the testimony tended to show, and had asked for a rebate on account of its

inferior quality. September 21, 1882, defendant wrote to plaintiff : " It [the whiting] is full of sand and grit, and we are constantly having trouble and complaints about the poor putty made from it, and upon adulterating for commercial putty it is well nigh worthless. It bids fair to ruin our putty trade. Don't think we can make any use of it. What are you going to do about it?" To which letter plaintiff replied, September 30, 1882, that this was the same whiting it was shipping throughout the West, with no complaints; that it did not think commercial whiting would stand adulteration, but was satisfied that when ground with linseed oil alone it makes good putty ; that it made only one grade of commercial whiting, and that upon further examination it would run all right. On the same day, September 30th, defendant wrote plaintiff : " On the 21st inst. we wrote you about the quality of the whiting you shipped us, and about the trouble we were having with it. If we do not hear from you by October 10th we will store the remaining whiting at your expense and risk." November 24th defendant wrote plaintiff that the whiting was " miserable stuff," and it had stored two hundred and fifty-eight barrels of it in a storage warehouse, where storage and insurance were running against it, and that they enclosed a bill of the two hundred and fifty-eight barrels and the freight paid on three hundred barrels.

The defendant stored the whiting on the 14th day of November, but did not notify the plaintiff until the last-mentioned letter was mailed, to which the plaintiff replied : "You received our best commercial whiting. We do not quote other than commercial whiting, which was our quotation to you, and from the fact of your having received and used the same goods before, should have posted you as to the grade and quality. We cannot agree with you as to its being miserable stuff, and shall hold you to the payment of the bill as invoiced." There is no question but that the defendant's order was for the " best commercial whiting," but it does not appear that there was any particular quality or grade known by that designation.

The plaintiff's claim, as itemized under the declaration, was as follows:

| | | |
|---|---|---:|
| Aug. 31. | 180 bbls. commercial whiting, 25c. each, | $ 45 00 |
| | 71,312 lbs. net, @ 56c. per 100 lbs, - - | 399 35 |
| Sept. 4. | 60 bbls. commercial whiting, 25c. each, | 15 00 |
| | 27,841 lbs. net, @ 56c. per 100 lbs, - | 155 91 |
| Sept. 14. | 60 bbls. commercial whiting, 25c. each, | 15 00 |
| | 23,845 lbs. net, @ 56c. per 100 lbs, - | 133 53 |
| | | $763 79 |
| Less freight | - - - - - | 233 72 |
| | | $530 07 |

The defendant's plea was the general issue, with notice of special defense, claiming damages (1) for payment of freight, $233.72; (2) cost of cartage, storage and insurance, $100; (3) loss of marble dust and oil used with the whiting in the attempt to manufacture putty, $100; (4) injury to the trade of the defendant by reason of the use of said whiting into putty, $1000; (5) difference in price of four cents per hundred by reason of market sale of class of whiting contracted for at the time.

The cause was tried in the Superior Court, before Judge Chipman, by jury, and the defendant recovered the sum of $509.21. Plaintiff asks a review of the case here, and assigns thirty-two errors, the most of which relate to the rulings of the court in receiving or rejecting testimony.

I have examined the correspondence between these parties with care, as well as the other testimony in the case. From these it appears that commercial whiting is an article well known in trade, and that some qualities or grades are better than others, owing to the difference in the quality of the chalk used. This fact seems to have been well understood by the plaintiff. It is referred to in the plaintiff's letter of September 30th, which says: "We make only one grade of commercial whiting, and are just as careful as possible to get it as near as we can. Sometimes chalk varies in quality, which will cause a difference." When the defendant commenced the treaty for the goods, Mr. Rogers, manager for the Detroit company,

wrote: " Please quote us 300 to 500 barrels *best* commercial whiting, delivered in Detroit." Three days thereafter the plaintiff answered: " We are pleased to quote you delivered at Detroit 300 to 500 barrels comrl. whiting, at 56 cts. per 100 pounds; bbls. 25 cts. each." This letter was answered by defendant, in which Mr. Rogers says: " You may enter our order for 300 barrels of your ' best commercial whiting on the terms named in yours of the 18th inst., and ship it as soon as convenient." It was upon this correspondence that the plaintiff forwarded the goods now claimed for.

It seems very clear, I think, that the undertaking on the part of the plaintiff was to deliver at Detroit to the defendant three hundred barrels of *the best* commercial whiting, at fifty-six cents per one hundred pounds, and twenty-five cents per barrel. The court substantially so charged the jury, and, I think, correctly.

Having ascertained the true construction of the plaintiff's undertaking, the next question was, had the defendant performed his contract; and, if not, was there anything done or omitted by defendant excusing or waiving such performance? Considerable testimony was taken to ascertain the quality of the whiting delivered, and a large number of exceptions were taken to the rulings of the court admitting the testimony upon this point, and tending to show the qualifications of the witnesses or want of knowledge to speak upon the subject; also tending to show the purposes for which commercial whiting is used. Of this character were the various questions raised and rulings made and excepted to, in the plaintiff's assignments of error numbered one, two, three, four, six, seven, eight, nine, ten, thirteen, nineteen, twenty-two, twenty-three, twenty-four, twenty-five, twenty-six and twenty-seven. No error, however, is discovered in any of these rulings prejudicial to the plaintiff, and it is not important that they should be considered in detail. Neither was any error committed in any of the charges given by the court, or in the refusals to charge.

It was insisted that no question could be made but that the plaintiff was entitled to recover for the barrels; that the

contract price for those was separate from that of the whiting. The whiting was the article desired by defendant. The barrels became a necessity in making the transportation and delivery, and were of no consequence to the defendant except in the use made of them in connection with the goods purchased. They were in fact a part of the goods, and if the defendant could not be made liable for the whiting it could not be for the barrels.

We fail to discover any error in the rulings or charge of the court on the subject of damages. It was the defendant's duty to receive and take charge of the goods when they arrived in Detroit, and he had a right to expect that they would be of the quality ordered; and if the plaintiff failed to furnish the article purchased by the defendant, and promised by plaintiff to be the best commercial whiting, but did furnish an inferior quality, and ship and deliver the same to the defendant at Detroit, as and for the goods promised, without notifying the defendant of the inferior quality of the goods, the plaintiff would be liable, unless the defendant chose to keep the goods, for all necessary charges and expenses in testing the article until defendant found out the difference in quality, and in addition thereto all other necessary, legitimate and approximate damages it sustained, arising directly from the failure of the plaintiff to redeem its promise as to the character of the article delivered. This would include all those expenses incurred in the means taken and things done which would be expected of any careful, prudent business man engaged in the trade under like circumstances. Insurance, freight, cartage and storage paid upon the goods were proper items of damage, and it was not improper to introduce evidence containing the footings of these items as claimed by the defendant. The fifteenth, sixteenth, seventeenth, twentieth and twenty-first assignments of error, all relating to these subjects, cannot, therefore, be sustained.

I think the following from the charge of Judge Chipman states the law correctly: "If you find for the defendants, I think they are entitled to what, under the undisputed testi-

mony in the case, the cartage, freight and storage amount to; together with the difference in price—in the market price—between what they purchased this whiting for, and what other whiting cost them at that time."

There was no error in admitting the exhibits offered in the case. They contained the contract between the parties upon which both relied, and were indicative of the understanding of the parties, and explanatory of the course pursued by each, and furnish reasons rebutting the presumptions claimed by plaintiff's counsel. Plaintiff offered to show by the deposition of Mr. Geofley, a member of the plaintiff company, that no guaranty of the quality of the whiting was given. This was objected to, upon the ground that the contract of sale was in writing, and that the writing contained the only evidence admissible upon that subject. The court so ruled, and we see no error in the ruling.

All that was objectionable referred to in the eighteenth assignment of error was fully remedied and removed in the charge of the court given in the paragraph above quoted.

It is claimed the court should have allowed the plaintiff to recover for the value of the forty-two barrels used or sold by defendant in testing the article before he found out its inferiority. Had this been done, simple justice would have required the allowance to the defendant of the damages it sustained in the use it made of the plaintiff's goods in testing the quality, and this, according to the undisputed testimony, was at least $1000, so that it clearly appears the plaintiff has not been injured by the action of the court upon this point complained of. Certainly the defendant derived no benefit from the amount used.

The article appears to have been, however, one which must be used before its quality can be ascertained. It was not apparent upon examination, and in such case it is the right of the defendant to make use of so much thereof as, under all the circumstances, may become actually necessary for that purpose, without liability for the value of the same if it fails in the test to fulfil the plaintiff's contract. The charge of

the court submitted this part of the case fairly to the jury in the following paragraph thereof:

" The question arises whether the goods were of such a character that, upon being received by the defendants, they could determine whether the goods were in accordance with the contract or not. If they were such goods that any one could determine by mere inspection of them, the mere sight of them would determine their character, then there would be no difficulty in this case whatever—there would be nothing to leave to you; and if you find they were such goods, then your verdict must be for the plaintiff. But the contention of the defendant is that they are not such goods; that they are of such a character that it is impossible, without actually trying them in the process of manufacture, to determine what kind of goods they are; that the question whether they are the kind of goods ordered at all, or whether they are the quality of goods that were ordered, can only be determined by the process of actual use. Now, you have heard the testimony upon that point, and you are to determine where the truth lies; whether that is so, or whether it is not so. If that is so, then the mere acceptance of the goods would not constitute an acceptance, and the defendants would have the right under the law to go a step further and to try to make experiment as to the quality of the goods, and as to whether they were such as fulfilled the contract which had been made between the parties. Now, in regard to this matter of trial, it must be reasonable; it must be such a trial as under all the circumstances of the case the subject-matter—that is, the goods—rendered necessary. The party cannot go on under the guise of making an experiment for an unreasonable length of time, or use an unreasonable quantity of the goods. The party must act with promptitude, and that promptitude must be reasonable in view of all the circumstances of the case. What would be reasonable promptitude in one case would not be promptitude at all in another case; so that in this case, as in other like cases, your duty will be to determine as to the degree of diligence the defendants used in ascertaining whether this article was the article they had contracted for, and as to whether the quantity which they used was such as did not go beyond a reasonable amount for the purposes of experiment. There were three hundred barrels in all. A certain number of barrels were used; was there too much used? Was the experiment continued so long as to amount to an acceptance of the goods?—as to amount to

an actual entering into a use of the goods? All these are questions for you to determine, and you must determine them by the testimony in the case. Now, in regard to the degree of promptitude. If you find that the goods were not up to the mark; if you find that the experiments and the use were such as you would assume to be reasonable—then the next question is, what did the defendants do in regard to the goods? It is claimed by them in testimony, and I think virtually admitted, that they stored the goods and notified the plaintiff that the goods were stored and subject to their order, and that was done shortly after or about the time, as I understand it, that these experiments, as they claim they were, ceased. Now, as I say, they must act promptly. They could not retain the goods for any great length of time after they knew that the goods were bad, and yet, by writing a letter of that kind, absolve themselves from paying for the goods. Neither could they continue their experiments too long, or use too great a quantity in their experiment." Benjamin on Sales, § 655 et seq.

On a review of the whole case—and it is all before us—we find no error in the rulings or charge of the court, and

The judgment should be affirmed.

COOLEY, C. J. and CAMPBELL, J. concurred.