# American Bridge Company *v.* Duquesne Steel Foundry Company, Appellant.

*Contract—Sale—Place of delivery.*

A bridge company addressed a foundry company as follows: "Please quote us best price f. o. b. East Berlin, for the following material, stating how soon the same could be delivered." On the following day this answer was sent: "We would be pleased to quote you the castings required for the bridge at New London at 3¾ cents f. o. b. our works." The bridge company accepted as follows: "Please deliver to us at Berlin plant, East Berlin (subject to the inspecting of a testing company named) . . . . to be furnished at price of 3¾ cents per ℔. f. o. b. your works, the above casting to be furnished in the rough; all necessary machine work to be done at the plant." Inspection was made by the testing company, first at the foundry and afterwards by the same company at the bridge company's plant. Some of the castings were rejected after the second inspection and returned to the foundry. The president of the foundry company on being

informed of the defects wrote to the bridge company directing the return of the castings rejected. The decision of the testing company was to be conclusive. *Held*, (1) that delivery was contemplated at East Berlin; (2) that the inspection at East Berlin was conclusive; and (3) the castings were properly returned and their price could not be recovered by the foundry company.

Argued May 3, 1905. Appeal, No. 151, April T., 1904, by defendant, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1903, No. 539, on verdict for plaintiff in case of American Bridge Company v. Duquesne Steel Foundry Company. Before BEAVER, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Assumpsit for goods sold and delivered. Before EVANS, J. The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

The plaintiff seeks to recover a balance which it alleges is due for some manufactured goods which it sold and delivered to the defendant. The claim of the plaintiff for the goods sold and delivered is admitted by the defendant. But it is claimed by the defendant that as a set-off against the plaintiff's claim, it has a claim for steel castings which it furnished at the request of the plaintiff. The plaintiff admits that it had a contract with the defendant for the furnishing of these steel castings, but claims that twenty-eight of those castings were not in accordance with the contract, and therefore it returned those castings, and that the price of those castings should be deducted from the defendant's claim of set-off against the plaintiff. Now, that is the whole contention in this case.

The plaintiff's claim of $1,850 is admitted to be due, subject to whatever claim the defendant has for steel castings furnished by it to the plaintiff. The plaintiff admits that the defendant furnished some thirty-two steel castings which it accepted, but alleges that twenty-four castings which were furnished by the defendant to the plaintiff were rejected, and properly rejected, and returned to the defendant.

[Now, as this contract is in writing, it is the duty of the court to tell you what it means, and I call your attention particularly to this because counsel for defendant has told you what it means,

.and as we do not agree with him, you will have to take your
instructions as to what this contract means from the court and
not from counsel for the defendant. In the first place, these
goods were not delivered at Coraopolis. They were delivered
at Berlin. The legal delivery of these goods took place at
Berlin. The contract is, " Please deliver to us at Berlin plant
·of American Bridge Company " certain goods then specified.
So that the delivery was not made at Coraopolis. The goods
were not the property of the plaintiff when put on board cars
at Coraopolis. The goods were to be delivered at the Berlin
plant of the plaintiff company at Berlin, Connecticut.] [1]

.[In the second place, there is nothing in the contract which
shows as to where the inspection was to take place, and there-
fore the inspection might take place at either the Coraopolis
plant of the defendant company, or at the Berlin plant of the
American Bridge Company, or at the bridge in New Bedford,
Massachusetts, or it might take place at all these places, accord-
ing to the desire or plans of the Pittsburg Testing Labora-
tory.] [2]

According to this contract, the acceptance of these steel
castings was made subject to the inspection and acceptance of
the Pittsburg Testing Laboratory. Now, that is, as the law
says, a condition precedent to the acceptance of these steel
castings by plaintiff. Before they are accepted by the plaintiff,
they must pass the inspection and be accepted by the Pittsburg
Testing Laboratory. And the reason for that is plain : All the
material, so the engineer testifies, that was to go into this bridge
was to be passed upon by the Pittsburg Testing Laboratory as
.agents for the city of New Bedford, and as the plaintiff could
not put any material in that bridge that did not pass the in-
spection of the Pittsburg Testing Laboratory, therefore it did
not desire to make itself liable for any material purchased un-
.less that material would pass the inspection and be accepted
by the Pittsburg Testing Laboratory; and therefore this pro-
vision. Now, that becomes important in this case for this reason:
That if the Pittsburg Testing Laboratory rejected and refused
to accept these twenty-eight steel castings, then no matter what
reason they had for doing it, unless it was collusion between
the plaintiff and the Pittsburg Testing Laboratory, and there
is no evidence of that, if they rejected it, that is the end of the

defendant's claim, and the property was properly returned to the Duquesne Steel Foundry Company. Now, the evidence on that subject, so far as the rejection by the Pittsburg Testing Laboratory at Berlin is concerned, is uncontradicted. It is testified to by several men, employees of the plaintiff company, and by Mr. Williams who was the engineer of the city of New Bedford. And in view of the remark of counsel, it is my duty to call your attention to one fact: While it is ordinarily true that where certain evidence is within the knowledge of one of the parties to a suit and he fails to produce that, the jury is justified in believing that if he had produced it, it would have been against him, that presumption does not exist in this case for the failure to produce some officer of the Pittsburg Testing Laboratory to prove that Mr. Bruce was an employee of that concern. The evidence of Mr. Williams was that Mr. Bruce was sent there by the Pittsburg Testing Laboratory as their representative; and anyway, the defendant knew of the existence of the Pittsburg Testing Laboratory and that their office was in the city of Pittsburg, and they could have produced them if they wanted to show that Mr. Bruce was not an employee of the Pittsburg Testing Laboratory.

[Another matter which is of importance in this case is the letter of Mr. Herron, instructing the plaintiff to return these castings to Coraopolis. Of course, that letter is based on the supposition that they had been rejected, and if you find that they were not rejected by the Pittsburg Testing Laboratory, then that letter is not important. But the letter is important in just this connection : It shows that Mr. Herron knew that the castings were subject to acceptance or rejection at the Berlin plant. If the goods had been finally inspected and accepted at the Coraopolis plant, then they could not have been rejected at the Berlin plant. And this letter is evidence of the fact that Mr. Herron knew that under the contract the castings could be rejected at the Berlin plant.] [3]

Now if they were rejected at the Berlin plant by the representative there of the Pittsburg Testing Laboratory, as I state, whether they were proper castings or not, if they were rejected without collusion between the Pittsburg Testing Laboratory or their agent and the plaintiff, then that rejection was final and bound both parties. If the Pittsburg Testing Laboratory

had accepted these steel castings, then no matter how defective they were, the plaintiff was bound to accept them. If they rejected them, no matter how good they were, the defendant was bound to accept the rejection.

[Now, that is the important question in this case: Whether these were rejected or whether they were not; and as I stated to you in passing upon that question, you must take into consideration the fact that Mr. Bruce, the agent of the Pittsburg Testing Laboratory, an employee of the Pittsburg Testing Laboratory at the Berlin plant, rejected these, is not contradicted in any particular.] [4]

Verdict and judgment for plaintiff for $852. Defendant appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*Thomas M. Marshall, Jr.*, for appellant, cited: Dannemiller v. Kirkpatrick, 201 Pa. 218.

*Samuel McClay*, with him *Reed, Smith, Shaw & Beal*, for appellee.

OPINION BY BEAVER, J., July 13, 1905:

Plaintiff brought suit against the defendant for certain merchandise bought by the latter from the former. Defendant set up as a defense a balance due on a previous account for materials purchased by the plaintiff from the defendant. A material question in the case arose as to the point of delivery of the materials last mentioned. The contract was in writing, based upon the correspondence between the parties. The material parts are as follows:

Plaintiff, writing defendant, October 16, 1901, says: "Please quote us best price f. o. b. cars East Berlin, Conn., for the following material, stating how soon same could be delivered." Defendant answered, October 17, 1901: "Your inquiry of October 16, with drawing No. 5, received. We would be pleased to quote you the castings required for the bridge at New London at 3¾ cents f. o. b. our works." The acceptance

of the plaintiff was under date of October 24, 1901. " Please deliver to us at Berlin plant American Bridge Co., East Berlin, Conn." (then follows the list of articles) " to be furnished at price of 3¾ cents per lb. f. o. b. your works." " The above castings to be furnished in the rough; all necessary machine work to be done at the plant."

The court charged that this required the delivery to be made at East Berlin, Conn. Of the correctness of this instruction we think there can be no question. In its preliminary inquiry and in the acceptance of the defendant's offer, the place of delivery is specifically mentioned. In the defendant's offer, there is no place mentioned. It is true the quotation is for price at its works, but that, as is clearly shown by the acceptance of the plaintiff, was simply the price and did not designate the place of delivery. The full price would be the price per pound f. o. b. works plus railroad freight to East Berlin, Conn.

We see no error in the other instructions complained of. It is alleged by the defendant that the Pittsburg Testing Laboratory made an inspection at its works. It also appears that one of the inspectors of the Pittsburg Testing Laboratory, who was in the employ of the municipality for which the bridge was to be erected, made an inspection at the bridge and condemned the castings, which were returned and received by the defendant, for the price of which it claims a set-off to the claim of the plaintiff. As will be observed from the quotation of the plaintiff's acceptance of the defendant's offer, the castings were to be furnished at its works in the rough, the necessary machine work to be done where they were to be used.

It seems clear that the inspection at the bridge was recognized by the president of the defendant company, for he says, in a letter of March 13:

" We have your letter of March 12, in regard to the castings furnished for your Berlin plant, and note with regret that defects have developed in some of the castings. This is an experience that is new to us, very few of all the castings we have furnished your company ever having been rejected. Such castings as may be rejected you will kindly have returned to Coraopolis."

We see no error in the construction which the court placed upon this letter.

The defendant claimed, however, that after the castings had been returned and received by it, they were re-examined and a disagreement arose as to whether or not they were actually defective. The fact that the inspection of the Pittsburg Testing Laboratory was to be conclusive seems to have been clearly recognized, so that the decision of its inspector, whether he was paid by the municipality or not, was complete justification for the plaintiff in returning the castings which were found, upon being machined, to be, as he determined, defective.

The contract being in writing, its construction was for the court. The determination of the trial judge as to the place of delivery was correct. As to the facts left to the jury, they were fairly submitted. We can see nothing in the case requiring our intervention. The assignments of error are, therefore, all overruled.

Judgment affirmed.