# Charles E. Hires Co., Appellant, v. Stromeyer.

*Contracts—Sales—Delivery—Passing of title—Price f. o. b.*

Where a contract in writing for the purchase of sugar provides that the sugar is to be shipped to purchaser's siding in Philadelphia at a price named f. o. b. New York, and that payment was to be made upon the arrival of the sugar and the checking of weights at the siding, the title does not pass until delivery in Philadelphia; and if the sugar delivered is not according to the contract the purchaser does his full duty, if he is not able to obtain the same sugar in Philadelphia, by buying the best substitute there which will answer the same purpose.

A purchaser of sugar is entitled to recover damages for a breach of contract to deliver a large quantity of clean and merchantable sugar where he is obliged to use six per cent. of the sugar before he can ascertain its real condition.

Argued Oct. 17, 1916. Appeal, No. 72, Oct. T., 1916, by plaintiff, from judgment of Municipal Court, Philadelphia Co., Aug. T., 1915, No. 91, for defendant n. o. v. in case of Charles E. Hires Company v. Julius Stromeyer, trading as J. Stromeyer & Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Assumpsit for breach of contract to sell and deliver sugar. The statement averred that the sugar delivered was not according to the contract was rejected and that plaintiff suffered loss by reason of being obliged to purchase other sugar in the market at an advanced price.

The facts are stated in the opinion of the Superior Court.

The case was tried by the court without a jury.

The trial judge returned a verdict for plaintiff for $192.70. The court in banc entered judgment for defendant for $320.01 n. o. v. Plaintiff appealed.

*Error assigned* was the judgment of the court.

VOL. LXV—16

*Thomas Raeburn White,* for appellant.—The place of delivery was in Philadelphia: American Bridge Co. v. Duquesne Steel Foundry Co., 28 Pa. Superior Ct. 479; Nicholson v. Taylor, 31 Pa. 128; Missouri & Illinois Coal Co. v. Pomeroy, 80 Ill. App. 144.

The plaintiff was not precluded from recovering damages for breach of contract by reason of having used a portion of the sugar delivered: Philadelphia Whiting Co. v. Detroit White Lead Works, 58 Mich. 29; Smith v. Love, 64 N. C. 439; Spiegelberg v. Karr, 24 Pa. Superior Ct. 339; Baltimore Brick Co. v. Coyle, 18 Pa. Superior Ct. 186; Fogel v. Brubaker, 122 Pa. 7.

*Percival H. Granger,* with him *J. Howard Reber,* for appellee.—The place of delivery was New York City: Dannemiller v. Kirkpatrick, 201 Pa. 218; Dennis v. Alexander, 3 Pa. 50; Scott v. Wells, 6 W. & S. 357; Miller v. Seaman, 176 Pa. 291; Dwight v. Eckert, 117 Pa. 490.

In any event the plaintiff is precluded from recovering damages by using six per cent. of the sugar after inspection: Elzea v. Brown, 59 Pa. Superior Ct. 403; Hamilton v. Kirby, 199 Pa. 466.

OPINION BY TREXLER, J., December 18, 1916:

The plaintiff purchased of the defendant five hundred bags of sugar to be delivered clean and merchantable in lined, jute sacks. The sugar was furnished in unlined sacks and was found to be unclean and unfit for plaintiff's use. The sugar was returned to defendant by the plaintiff who went into the open market and bought the nearest substitute paying a higher price than was stipulated in the contract. It now brings suit for its damages. The case was tried before a judge in the Municipal Court without a jury and resulted in finding for the plaintiff which the court, the trial judge not sitting, reversed and entered judgment for the defendant.

1. The first question which presents itself is whether

the contract between the parties provided for delivery in New York or in Philadelphia. An examination of the letters we think will determine the matter. The letter of the plaintiff of March 18, 1915, directs the defendant to ship the sugar as per sample to the Charles E. Hires Company's siding, Philadelphia. Price to be paid is $5.30 net 100 pounds f. o. b. New York. Payment is to be made upon arrival of goods and checking of weights at the Hires Company's siding. The defendant in accepting the offer confirmed these terms "payment to be made immediately upon arrival and checking of weights." The court found that this provided for delivery in New York. The price was fixed f. o. b. New York but it seems clear to us that the place of delivery was Philadelphia. The goods as per sample were to be shipped to plaintiff's siding in that city and payment made when the goods actually arrived and were checked. It is true that the rule is that delivery to the common carrier is delivery to the purchaser, but this rule will give way to the expressed intention of the parties to the contrary: Dooley v. N. Y. C. & H. R. R. R. Co., 62 Pa. Superior Ct. 237, and cases there cited.

The case of American Bridge Co. v. Duquesne Steel Foundry Co., 28 Pa. Superior Ct. 479, very much resembles the case before us. In that case the price was f. o. b. at the company's works but the delivery was to be made at East Berlin subject to the inspection of the vendee. It was held that although the price was f. o. b. cars it did not designate the place of delivery. "The vesting of the title always depends upon the intention of the parties to be drawn from the contract and the circumstances. As long as anything remains to be done as between the vendor and vendee for the purpose of ascertaining the amount and price of the article, the property and risk remains in the vendor": Nicholson v. Taylor, 31 Pa. 128; Thompson v. Franks, 37 Pa. 327. Where the sale is by sample, the goods not being seen by purchaser until they have reached their destination, he may reject them if

found not to be in accordance to the contract: Fogel v. Brubaker, 122 Pa. 7.

2. The court further held that plaintiff could not recover because it had used too much of the sugar before it returned the remainder. The trial judge found that plaintiff was entitled to reasonable time to inspect the sugar, that it used about six per cent. in testing it, that such trial was necessary to ascertain whether the fibre and lint would clog plaintiff's filters, and that when it was ascertained that the sugar was unfit for use the plaintiff promptly notified the defendant. Notwithstanding these findings the court decided that the presence of dust, lint and fibre was discernible by ocular inspection. The question is whether the trial judge had sufficient testimony before him to support the conclusion that "it was impossible to ascertain whether the fibre and dirt would clog the filters of plaintiff company so as to make the use of the sugar impossible without giving it a trial in the way plaintiff usually used sugars." The sugar may have contained dirt and was admittedly packed in unlined bags, but the plaintiff was not bound to reject it until it could ascertain whether it was injuriously affected by the failure of the defendant to ship it in good condition. We quote the testimony of Charles E. Hires on this point (after the witness had testified to the presence of lint): "Q.—That was noticed by you when the cars arrived? A.—No, sir. Q.—When did you first notice it? A.—When we started to run it through the filters. Q.—After the first small lot of sugar was filtered the first day, did you have a consultation with your father? A.—Yes, sir. Q.—What was the substance of that consultation? A.—That we attempt to use it and be absolutely sure that we couldn't use it before we turned it down. Q.—And that was after the small lot was used? A.—Yes, but the big trouble when we attempted to make a full batch of that sugar, that was then the big trouble arose."

The rule of law is that when a vendee receives a thing

into possession and is dissatisfied with it for the reason that it is not of the quality contracted for, he has two courses to pursue, either to retain it and claim a reduction, or rescind the contract, and reject it. He cannot use part and return part: Elzea v. Brown, 59 Pa. Superior Ct. 403. This rule however applies after the vendee has had the chance to inspect it. The use of a portion of the goods is in many cases a prerequisite to a determination of its quality. In Philadelphia Whiting Co. v. Detroit White Lead Works, 58 Mich. 29, the Supreme Court of Michigan, COOLEY, C. J., and CAMPBELL and SHERWOOD, JJ., decided that the use of forty-two barrels of whiting out of a total shipment of three hundred did not amount to an acceptance of the goods. The following excerpt of the charge of the lower court was quoted with approval: "The question arises whether the goods were of such a character that, upon being received by the defendants, they could determine whether the goods were in accordance with the contract or not. If they were such goods that any one could determine by mere inspection of them, the mere sight of them would determine their character, then there would be no difficulty in this case whatever—there would be nothing to leave to you; and if you find they were such goods, then your verdict must be for the plaintiff. But the contention of the defendant is that they are not such goods; that they are of such a character that it is impossible, without actually trying them in the process of manufacture to determine what kind of goods they are—whether they are the quality of goods that were ordered, can only be determined by the process of actual use —. If that is so, then the mere acceptance of the goods would not constitute an acceptance, and the defendants would have the right under the law to go a step further and to try to make experiment as to the quality of the goods, and as to whether they were such as fulfilled the contract which had been made between the parties. The party cannot go on under the guise of making an experiment

for an unreasonable length of time, or use an unreasonable quantity of the goods. The party must act with promptitude, and that promptitude must be reasonable in view of all the circumstances of the case. What would be reasonable promptitude in one case would not be promptitude at all in another case; so that in this case, as in other like cases, your duty will be to determine as to the degree of diligence the defendants used in ascertaining whether this article was the article they had contracted for, and as to whether the quantity which they used was such as did not go beyond a reasonable amount for the purposes of experiment."

The point seems not to have been expressly ruled in our State, but the principle has been recognized in a number of cases, although not involved in the decision of the cases. In Spiegelberg v. Karr, 24 Pa. Superior Ct. 339, Judge ORLADY used this language: "A large quantity of the linen was cut and manufactured before the defendant could possibly have been aware of the fact that the linen was of second quality, thereby reducing the market value thereof and occasioning a positive loss." In Baltimore Brick Co. v. Coyle, 18 Pa. Superior Ct. 186, Judge PORTER said, "If the goods tendered under the contract were not the same in quality as the sample, and if the variance was material, it was apparent upon the first view, not latent and requiring time for detection." So also in Fogel v. Brubaker, 122 Pa. 7, Justice WILLIAMS said, "It is when the articles come under the observation of the purchaser and he is able to see whether they are such as he has ordered, that he is bound to elect whether to accept them or not."

3. The ruling of the lower court as to the measure of damages is premised upon New York delivery. As we have concluded that Philadelphia was the place where delivery was to be made, the plaintiff did what was required of him in order to fix his damages. The particular kind of sugar contracted for not being obtainable in the

local markets, it bought the best substitute which would answer the same purpose.

The judgment is reversed and the record remitted with directions that judgment be entered upon the finding of the learned trial judge.