## J. L. OWENS COMPANY v. PATRICK O'KEEFFE AND ANOTHER.[1]

December 27, 1918.

No. 20,958.

**Sale — breach of warranty of grain cleaner.**

1. A contract for the sale of a grain cleaner required the buyer to pay the freight from Minneapolis to Sharon and gave 30 days' trial. The contract contained a warranty as to efficiency and capacity and provided that, if the warranty failed, the machine might be rejected, and that in such case the buyer would recrate the machine and ship it back. The buyer claimed the machine did not fulfil the warranty. The seller continued to try it out beyond the 30-day period. Immediately after the last try-out the buyer removed it and reshipped it so that it reached Minneapolis by freight within 20 days from that time.

**Same — evidence.**

2. The evidence sustains a finding that the machine failed to fulfil the warranty.

**Same — construction of terms of warranty.**

3. A warranty that the machine would clean "good No. 1 or 2 wheat" does not mean that the wheat must be in good condition for cleaning.

[1] Reported in 170 N. W. 204,

This contract contemplated the cleaning of such wheat as was grown in the vicinity of Sharon. An exception in the contract as to certain mixtures of seed excluded the implication of any other exception.

**Sale — charge to jury — harmless error.**

4. The making of alterations by the seller did not start a new 30-day period of trial. An instruction to that effect was error.

**Same — reasonable time for testing machine.**

5. It was error without prejudice. The buyer had a reasonable time after such alterations to again test the machine and a return of the machine was made within a reasonable time.

**Same — recovery of freight paid by buyer.**

6. Defendants, upon rescission for breach of warranty, were entitled to recover the freight advanced by them.

Action in the district court for Hennepin county against the persons doing business as the Sharon Milling Company to recover $493.84 for a grain cleaner and equipment sold to defendants. The answer alleged that the machine wholly failed to clean wheat in accordance with the written warranty, part of which is quoted in the second paragraph of the opinion, and after plaintiff had many times attempted to make the machine work, defendants recrated it and shipped it to plaintiff at Minneapolis. The case was tried before Fish, J., who at the close of the testimony denied motions for directed verdicts, and a jury which returned a verdict in favor of defendants. From an order denying its motion for a new trial, plaintiff appealed. Affirmed.

*Francis B. Hart,* for appellant.

*Cray & Eaton,* for respondents.

HALLAM, J.

On August 19, 1915, plaintiff, located at Minneapolis, Minnesota, contracted to sell to defendant, grain buyers and millers at Sharon, North Dakota, a grain cleaner and separator manufactured by plaintiff. The machine was to be shipped from Minneapolis to Sharon. By the terms of the contract defendant agreed "to pay freight and receive this shipment upon its arrival." The terms were "cash after thirty days' trial."

The contract contained the following "guarantees:" 1st, "that the

machine  *  *  *  will separate an average mixture of wild and tame oats in good No. 1 or 2 wheat to ½ lb. to the bushel once thru.  On a mixture of from 7 lbs. up to 20 or 30 lbs. of wild and tame oats in wheat the machine will reduce it from 1½ to 3 lbs. once thru," with the reservation, that "if the mixture contains short, chunky and heavy oats" it "may be necessary to re-run the wheat  *  *  *  to reduce the dockage to above figures;" 2nd, that the machine would have a capacity of four to five hundred bushels an hour.

The contract provided that, if the machine should not work according to "guarantee," defendant would notify plaintiff and give plaintiff an opportunity to have its representative come and show them how to run it, and if he could make it work the agreement should be in force, otherwise the defendants would "recrate the machine and ship it back."

Plaintiff shipped the machine, defendants received it, and paid the freight.  It was installed late in September.  Defendants complained that it did not fulfil the warranty.  Plaintiff's sales agent called on defendants, but without satisfactory result.  On October 25 defendants wrote plaintiff that the machine was refused because it did not work according to "guarantee" and that if not adjusted to do the work within reasonable time the machine would be removed, crated and returned. After further correspondence plaintiff wrote on November 3: "We want you to give the machine a fair trial" and added, "he will experiment with it a bit more."  From December 16 to 18 plaintiff had an expert, C. O. Larson, on the ground.  Plaintiff's president was also present part of this time.  Larson made some alterations, operated the machine for a while and went away.  Still defendants claimed it did not fulfil the "guarantee."  Larson came back again on January 5, 1916, to "give it another trial, give it another try-out," and remained during January 5 and 6.  Defendants' evidence is that he again made some alterations.  Finally on January 6 he said: "That is all I can do with it."  One of the defendants then said: "Well  *  *  *  the machine is yours, it is going to be taken out and crated and sent back."

Either that day or the next, defendants started taking it out, and on January 7 wrote plaintiffs as follows: "After a careful try-out we refused this machine on October 25th, for [the] reason that it did not live up to the terms of the warrantee, and we still refuse it on these

grounds * * * we will remove the machine, and unless you furnish us other shipping orders * * * will crate and ship to you at Minneapolis, and draw against it for freight paid before the eighteenth of January, which is the date on which our trial expires." Some days later defendants shipped the machine by freight from Sharon to Minneapolis, and attached to the bill of lading a draft for the amount of freight advanced, placing the machine subject to plaintiff's order on payment of the draft. When shipment was made does not appear, but it arrived in Minneapolis before January 26. Defendant refused to honor the draft and refused to accept the machine, claiming "the machine is yours under the provisions of the contract and what has been done in execution of it."

Plaintiff brought this action to recover the contract price of the machine. The defense was that the machine did not fulfil the warranties, and that defendant had rescinded pursuant to the right given by the terms of the contract. The jury found for defendants. From an order denying a new trial plaintiff appeals.

2. Defendants offered evidence that the machine did not fulfil either of the warranties above quoted. It is sufficient to sustain a finding in defendants' favor on both points.

3. Plaintiff claims defendants did not give the machine such a trial as the contract contemplated. It contends that the clause of warranty "that the machine * * * will separate an average mixture of wild and tame oats in good No. 1 or 2 wheat" means that the wheat to be cleaned must be in good condition for cleaning, and it contends that the wheat upon which the machine was used was not in a good condition for cleaning, that it was Marquis wheat and contained "white caps," that is to say, kernels which after passing through the threshing machine still have upon them part of the hull, and that it was this condition that caused the trouble. We do not concur in plaintiff's construction of the contract. We think the language quoted refers to the quality of the wheat and not to its condition for cleaning. The evidence shows that about half the wheat grown in this vicinity of Sharon and marketed there is Marquis wheat. Defendants' evidence is that Marquis wheat is difficult to thresh, that white caps are not uncommon in it after threshing, but that in 1915 there were not more than usual. The machine was

sold to be used at Sharon. The contract contemplated the cleaning of such wheat as was grown in that vicinity, Marquis wheat as well as other varieties. There was no reservation in this contract as to presence of white caps. The only reservation is as to a mixture containing "short, chunky and heavy oats." This reservation excludes the implication of any other.

4. The jury having found that the warranty was not fulfilled, defendants had the right to return the machine and absolve themselves from liability for the price, unless they lost that right. Plaintiff contends that they did lose that right, that they did in fact accept the machine. In this connection plaintiff excepts to an instruction to the jury that the action of the plaintiff in going to Sharon in December and making alterations and trying out the machine "started a new period of trial of that machine" and that "the defendants have thirty days to try the machine after December 18th, after the last changes and alterations were made by the plaintiff." We are of the opinion that the court incorrectly construed this part of the contract. The contract gave only one period of "thirty days' trial." After plaintiff under the terms of the contract came and made alterations and tried to "make it do the work" defendants had a reasonable time to ascertain the success of the efforts but not necessarily 30 days.

5. We are of the opinion, however, that this error was not a material one. The evidence is undisputed that plaintiff continued to "try out" the machine until January 6, 1915. Surely then plaintiff is in no position to complain of the fact that defendants continued to keep it up to that time. The evidence is also clear that defendants, verbally on January 6, and in writing on January 7, unequivocally notified plaintiff that they would reject and return the machine and asked for shipping orders. That they forthwith removed it from their plant and, receiving no shipping orders, shipped it so that within 20 days after the last tryout it had arrived by freight at Minneapolis. We think there can be no issue as to the point that defendants acted with reasonable promptness and that the machine was not accepted.

6. We are of the opinion that under the terms of the contract defendants had the right to recover the freight advanced by them for shipment of the machine from Minneapolis to Sharon. They agreed to re-

ceive the machine and pay the freight, but they did not stake the amount of the freight on the success of the machine. The amount of the freight should rather be construed as part of the price they were to pay. The contract gave them a right to rescind upon breach of the warranty. Upon rescission it obligated them to return the machine and we think it contemplated that they should in that event have restored to them what they had paid. This right naturally accompanies a rescission. Beal v. Minneapolis Threshing Machine Co. 84 Mo. App. 539; Philadelphia Whiting Co. v. Detroit White Lead Works, 58 Mich. 29, 24 N. W. 881; see also Evenson v. Keystone Mnfg. Co. 83 Minn. 164, 86 N. W. 8; W. W. Kimball Co. v. Massey, 126 Minn. 461, 148 N. W. 307.

Order affirmed.

On February 7, 1919, the following opinion was filed:

PER CURIAM.

Counsel for plaintiff in his petition for reargument makes the statement that defendants' counsel never advanced the theory that their rights were affected by the transaction of January 6 and that neither of the briefs submitted on the hearing argued that question. Defendants' brief made reference to this incident, but plaintiff's counsel was probably justified in believing that defendant did not give it the importance that this court attached to it in the opinion filed. For these reasons we have examined the showing made on the petition for reargument with special care. After doing so we are still convinced that the decision is right, and we think no useful purpose would be subserved by a rehearing.

Motion for rehearing denied.