# Gilbert *v.* Ayoob, Appellant.

*Contracts—Sales—Denial of agency—Question for jury.*

In an action of assumpsit, on a contract for the sale of five car loads of melons, made through the agency of a commission broker, the question of such agency is for the jury, where the plaintiff alleges that the broker was acting for the defendant, and the defendant denies the agency.

*Contracts—Sales—Proof of trade customs—Evidence.*

When a trade term is used in any contract, the meaning of that term, in the absence of an agreement to the contrary, is to be taken as that generally recognized in the business, and when a party undertakes to prove such custom he is not conclusively bound by the testimony of the first witness whom he may call. He may not ordinarily impeach the credibility of his witness without showing that he has been misled, but it is competent for him to call other witnesses having experience although their statements of the custom may vary.

*Shipments—Delivery—Passing of title.*

Where a consignment of melons is shipped by a consignor, billed to his own order, and no evidence is produced to show vendee's title, except that he was notified of the arrival of the shipment, the title to the melons must be considered to remain in the consignor.

Argued May 2, 1918.   Appeal, No. 140, April Term, 1918, by defendant, from judgment of C. P. Allegheny Co., April T., 1915, No. 1057, on verdict for plaintiff in case of D. H. Gilbert v. H. K. Ayoob. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit on contract for the sale of watermelons. Before SHAFER, P. J.

Verdict for plaintiff for $651.65 and judgment thereon. Defendant appealed.

The facts appear in the following opinion of the court below refusing new trial.

The plaintiff is a grower, or shipper, of melons in Florida, and the defendant a dealer in melons and other fruits in Pittsburgh. Thornley Brothers were commission dealers doing business in Pittsburgh. The contract upon which the suit was brought was formed by a number of telegrams between Thornley Brothers and the plaintiff, the first telegram being sent by Gilbert, asking if they wanted more melons for Ayoob and stating he had ten cars of certain sizes, to which Thornley Brothers replied that Ayoob would take five cars at a less price than that offered, to which Gilbert replied agreeing to sell five cars to Ayoob, of certain sizes, for a total sum of $1,065; and Thornley Brothers wired him confirming Ayoob's offer; and these telegrams sent by Thornley Brothers were authorized by Ayoob. When the melons arrived Ayoob refused to receive them and they were sold in the market for a price considerably less than that which Ayoob had agreed to pay, and this suit is to recover that difference as damages for the breach of the contract. The verdict was for the plaintiff for the full amount of his claim. The defendant would have had a much stronger case if he had not set up so many inconsistent defenses. One of these was that he never made any contract at all with Gilbert but that his contract was with Thornley Brothers; another was that hearing that the cars had not been shipped by a certain time he had revoked the order by a telegram sent to the plaintiff; another reason, which he mentioned in his testimony and which was the only reason he set up in a letter to Gilbert shortly after the arrival and sale of the melons, was that Thornley Brothers had agreed not to sell melons to any other dealer here, and that they had broken that agreement. And a further defense, and the principal defense, was that the melons were not of the size ordered, and not in good condition when they arrived. It further appeared by the uncontradicted evi-

dence of the plaintiff that the price had declined from fifty to a hundred dollars a car between the time the order was given and the arrival of the melons. There was no question that the melons had come within the ordinary time of such shipments. All these matters were submitted to the jury and in view of these facts and the inconsistencies of the defendant's case the verdict was one to be expected. There was some question as to the size of the melons in one car and some variation in the testimony of witnesses on both sides as to what constitutes a 24- or 25-inch melon in the custom of the market, and what latitude is allowed in measuring them. There was evidence, however, from which the jury might well find that the melons were fairly within the sizes ordered. The motion for judgment n. o. v. and the motion for a new trial are both refused.

*Errors assigned* were the charge of the court, various rulings on evidence and refusal of motion for new trial and for judgment non obstante veredicto.

*George H. Rankin,* for appellant.—The consignment was the property of the plaintiff in transit and defendant had right of refusal on inspection: Amer. B. Co. v. Duquesne F. Co., 28 Pa. Superior Ct. 479; Dooley v. N. Y. C. & H. R. R., 62 Pa. Superior Ct. 237; Hires Co. v. Stromeyer, 65 Pa. Superior Ct. 241; McHenry v. Bulifant, 207 Pa. 15; Whiting v. Fourth National Bank, 15 Pa. Superior Ct. 419; Dannemiller v. Kirkpatrick, 201 Pa. 218; Sloss-Sheffield Co. v. Tacony Co., 54 Pa. Superior Ct. 11; 35 Cyc. 316, 317.

There was no proof of a contract between plaintiff and defendant: Creveling v. Wood & Leman, 95 Pa. 152; 9 Corpus Juris, 511; 1 Mechem on Agency, Section 73.

*John Murray Redden,* and with him *A. Seder,* for appellee.

OPINION BY PORTER, J., April 21, 1919:

The first specification of error refers to the refusal of the court to give binding instructions in favor of the defendant, the second specification to the refusal to enter judgment in favor of the defendant non obstante veredicto, and the third to the refusal of a new trial. The opinion of the learned president judge of the court below, which will appear in the report of this case, properly disposes of those questions and fairly summarizes the evidence and renders further discussion of that branch of the case unnecessary. The fourth and fifth specifications refer to the refusal of the court to affirm points submitted by the defendant which assumed as established certain facts with regard to which there was a conflict of evidence. Whether such were the facts were questions for the jury and the instructions were properly refused. The negotiations for the purchase and sale of the five carloads of melons in question were conducted through Thornley Brothers, who were represented entirely by a man named Door, whose deposition was read at the trial. He testified that Thornley Brothers acted as brokers in the transaction and with the knowledge and by the authority of the defendant sent telegrams to the plaintiff. The defendant denied that he had authorized Thornley Brothers to send the telegrams. This raised a disputed question of fact, which it was the province of the jury to decide. The telegrams were properly admitted in evidence, and the jury was instructed that the authority of Thornley Brothers to send them was a question of fact to be decided under the evidence. The testimony produced by the plaintiff would have warranted a finding that the contract was for the sale of five cars of melons, "one thirties, three twenty-seven-eighths, and one twenty-fives," that this meant one carload of thirty-pound melons, three carloads of twenty-seven to twenty-eight pound melons and one carload of twenty-five pound melons. A question arose as to the limit of the amount of variation in weight from that in-

dicated for the melons in any car, allowable under the general custom of the business. The defendant contended that the melons must weigh not to exceed more than one pound more or less than that named. When a trade term is used in any contract the meaning of that term, in the absence of agreement to the contrary, is to be taken as that generally recognized in the business. When a party undertakes to prove a custom in a business he is not conclusively bound by the testimony of the first witness whom he may call. He may not, ordinarily, directly impeach the credibility of his witness, without showing that he has been misled by the witness, but it is competent for him to call other witnesses, having experience, although their statements of the custom may vary. The witness Ramsey was shown to be entirely familiar with the business and its customs and his testimony was properly admitted.

The questions where the melons were to be delivered and at whose risk they were during the transportation remain to be considered. There is no dispute as to the price, which was a lump sum of $1,065, plus the freight to Pittsburgh. The testimony produced by the plaintiff would have warranted a finding that the contract was that the melons should be delivered f. o. b. Florida, subject to inspection when they arrived in Pittsburgh as to size only, and not as to condition. The testimony produced by the defendant was to the effect that he was to pay the price named, plus the freight to Pittsburgh, but that the melons were to be delivered in Pittsburgh and subject generally to his inspection. The question really in dispute was, therefore, whether the plaintiff or the defendant was to bear the loss in case the goods became damaged while in course of transportation. A number of assignments of error refer, directly or indirectly, to this question, but it is more directly raised by the twelfth specification, which refers to that part of the charge of the court in which it was said: "He (Ayoob) said they (the melons) were not right either in

the size of the melon, which it is admitted he had a right to object to if they were not right, and he said they were not right in their condition or quality, rather, and it is a question whether he had a right to object to them on that ground, depending upon whether the melons were his along the road, or whether they were only his when they got to Pittsburgh, because if they were his according to the bargain when they were put on the cars in Florida, then if they rotted in the meantime, that would be his loss." The evidence produced by the plaintiff clearly established that he had caused the melons to be shipped from different points in the State of Florida, consigned to himself and not to this defendant, subject "to diversion." The plaintiff testified that the melons were loaded on cars at different points, "and each car was loaded the same day it had begun, and rode promptly to diversion points as has always been my method." The cars when started upon their journey were consigned to the plaintiff. There is no evidence to indicate when, where, or how they were diverted, the only evidence being that when they arrived at Pittsburgh, this defendant was notified of that fact. There was evidence that prior to the arrival of the cars a draft for the purchase price of the melons was presented to the defendant, which he declined to pay. The learned counsel representing the appellant has contended in the court below and has argued here that under these undisputed facts the court ought to have charged as matter of law that the melons during the course of transportation were the property of the plaintiff, and at his risk. This contention of counsel was well founded and the instruction above quoted was, under the undisputed facts, erroneous: McHenry v. Bulifant, 207 Pa. 21; Pittsburgh P. & P. Co. v. Cudahy P. Co., 260 Pa. 135; Hires Co. v. Stromeyer, 65 Pa. Superior Ct. 241. If the instruction complained of had been all that was said upon the point we would be constrained to reverse this judgment, but the matter did not rest there. Counsel for the defendant at

the conclusion of the charge, with commendable candor and fairness, called the attention of the court to the evidence with regard to the manner in which the cars had been consigned and stated: "They were started rolling under that consignment, and there is no evidence in the case to show that they were turned over to the defendant, or came into the defendant's possession in the railroad records, before they arrived in Pittsburgh, therefore, there could not have been any delivery in Florida to the defendant." Whereupon the court said: "That is true, probably. I do not know that it is highly important in this case, but it is a question, but as I have said to you, gentlemen of the jury, these melons were not decayed on the way, therefore, their condition here is evidence of what their condition was when they were started, although really this is not very material, because it is admitted all round that the melons came here on proper time." We are of opinion that this set the matter right and that the finding of the jury ought to be accepted as a determination that the melons were in proper condition when they arrived in Pittsburgh. The evidence as to the condition of the goods at the time of arrival at their destination was conflicting and while we might be inclined to regard the weight of it as in favor of the defendant, the question was for the jury, and as the court below heard the evidence and had the witnesses before it, we do not feel warranted in holding that the refusal of a new trial was an abuse of discretion.

The judgment is affirmed.