## CHARLES F. MURPHEY CO. v. FULTON BAG & COTTON MILLS.

(Circuit Court of Appeals, Seventh Circuit. January 3, 1922. Rehearing Denied April 5, 1922.)

No. 2979.

Sales ⚷182(4)—Whether taking by purchaser of part of shipment constituted acceptance held jury question.

Whether the taking by defendant of a few bags from a carload of 50,000, shipped by plaintiff under a contract of sale, constituted an acceptance which bound defendant to take all, may depend on the intent with which they were taken, and where the shipment was made to a point remote from where defendant, a corporation, was located, and the bags were taken from the car by its agent for samples, as was claimed, and sent to defendant during negotiations as to acceptance, an instruction that such taking was an acceptance as matter of law *held* erroneous.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action at law by the Fulton Bag & Cotton Mills against the Charles F. Murphey Company. Judgment for plaintiff, and defendant brings error. Reversed.

Earl J. Smith and John I. Evans, both of Chicago, Ill., for plaintiff in error.

Roland D. Whitman, of Chicago, Ill., for defendant in error.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

---

⚷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

E.VANS, Circuit Judge. Defendant prosecutes this writ of error to review a judgment arising out of a contract for the purchase and sale of 50,000 cotton bags of a certain kind and description. Plaintiff made tender under its contract, and defendant rejected the bags thus tendered because of their alleged failure to meet the contract requirements. Plaintiff also relied upon the acceptance of a portion of the shipment as binding defendant to accept all of it. It is in reference to this theory that error is assigned, which requires our consideration of the judge's charge to the jury. To better understand the criticism of this charge we state the pertinent evidence:

Plaintiff shipped a car containing 50,000 bags from St. Louis to defendant at Cameron, Wis.; shipment reaching its destination November 12, 1918. Immediately representatives of the defendant made a rather cursory examination of the sacks, opened a bale or two, and reported by wire to defendant at Chicago "the car was below grade and very poor." Thereupon defendant notified plaintiff by wire that it refused to accept the bags, and that the car was "at Cameron, Wis., refused, subject to your order." Plaintiff thereupon notified defendant that its representative would go to Cameron, but efforts to adjust the matter failed, and plaintiff notified defendant that the bags would be sold to pay the freight, demurrage, and storage, and the balance applied on the purchase price, which was done. Shortly before and after delivery the market for these bags dropped sharply. The verdict was for the contract price of the bags, less the amount realized from the sale.

Defendant's agent, when he examined the car, November 12th, took 7 bags as samples, which he sent to defendant's main office in Chicago. Defendant sent them to plaintiff at St. Louis. Shortly before plaintiff's agent reached Cameron to inspect the car, defendant's agent again went to the car, accompanied by numerous witnesses. The station-agent unsealed the car, and all of the parties examined the bags and thus qualified themselves to testify later upon the trial. Their going and their examination was unknown to plaintiff. Five bags were taken from the car at this time. A few days later plaintiff's agent arrived, and he, together with the defendant's representative, visited the car, examined a large number of sacks, and made certain tests of some of them. After he left, defendant's representative returned to the car and took 18 more sacks, which he claimed were representative, or, to use his own language:

"Perhaps a little on the poorest order. They were taken after Miller left. I did not tell him I was going to make any selection."

The judge charged the jury:

"There was some evidence of dealing with those bags there as though they belonged to the defendant. If the defendant wanted any of those bags, he seemed to have gone and taken them as though they were his. For instance, they took out a bunch of bags, 6 or 7 or 8 of them, and sent them to Chicago. Another time they took out 5; does not appear what became of them. You have 18 bags upon the rail that were taken out. It is for you to determine what effect that has upon the question of acceptance or rejection of this carload of bags. If they were going to take the bags at all, if they were not up to the contract, they had to do one of two things: It was their duty to take all of the bags that were good, if they took any of the bags at all. They had

no right to take a part, such part as might please them, for evidentiary purposes, or for any other purpose, and reject perfectly good bags. They were either their bags or they were not, by their acceptance."

Exceptions were saved. Undoubtedly a purchaser may obligate himself to pay for merchandise not up to representation by acceptance. And equally well settled is the law that acceptance of a part of a shipment may bind the purchaser to accept all. Likewise an acceptance of the goods after rejection may obligate the purchaser to pay for all (Cream City Glass Co. v. Friedlander, 84 Wis. 53, 54 N. W. 28, 21 L. R. A. 135, 36 Am. St. Rep. 895), leaving him his remedy to recoup or set off his damages arising out of the breach of warranty. But we are dealing with the question of acceptance as such, not with its effect upon the rights of the parties. The issue of acceptance may of itself be one for the jury (35 Cyc. 262), fully as much as the issue of warranty or compliance with a warranty. Acceptance involves more than mere physical possession. Intent may become the determinative factor.

The present case is illustrative. Both parties were corporations that acted through agents, the vendor residing in St. Louis, the purchaser in Chicago, and the shipment was made to an agent with limited power in northern Wisconsin. When such agent advised his principal that the sacks were inferior in grade, he sent 7 samples to support his opinion. This was not in acceptance of any part of the shipment, for the defendant did not retain the sacks, but, in support of its claim based upon the wire of its agent, forwarded them to the plaintiff. It was the only practical way of settling a dispute between the parties.

It is true at this point the defendant rejected the shipment, but the plaintiff did not accept this rejection as final. It called upon defendant to reconsider its action, and sent an agent to northern Wisconsin, who invited defendant to make another and more thorough examination. Before plaintiff's representative arrived, defendant's agent, accompanied by outside parties, went to examine the sacks, opened more bales than previously, and, after plaintiff's agent left, but on the same day, took 18 sample sacks, as he called them, that the defendant at Chicago might the more intelligently act in respect to plaintiff's proposal to reconsider its rejection and accept the carload lot. If the jury, from all the evidence, did not find that this was the purpose of their taking, it might well have found that the defendant's agent at Cameron acted entirely outside his authority in taking these 18 bags and that his acts were not ratified. It is true plaintiff asserts that defendant never acted in good faith, that it had already purchased other sacks, that the price had fallen greatly, and that defendant had decided to repudiate its contract before the shipment was ever made, and there is evidence to support this charge.

These facts, if established to the satisfaction of the jury, may have had important bearing upon certain other issues; but we fail to see how they control the issue of acceptance. At best, their probative value was for the jury to determine, and they do not constitute all the evidence on the issue of defendant's good or bad faith. It must be borne in mind that plaintiff was dealing with defendant in Chicago, who in turn was relying on its agent in northern Wisconsin. This representa-

tive first sent 7 sacks that satisfied his principal that the shipment should be rejected. Plaintiff insisted the 7 sacks were not fair samples, and demanded a more thorough examination of the carload lot. Defendant acquiesced, and the local agent again made an examination. He and plaintiff differed in their opinion. To support his position he took other samples, 18 in number. It was not for him to make the ultimate decision. That responsibility rested with the principal in Chicago. When he thus took the samples, the question was not closed. They were taken to assist the parties in determining whether the sacks were up to the requirements of the contract—to determine the question which defendant had reopened at plaintiff's request. At least this is what defendant urges, and there is some evidence to support such an inference. At least a jury question was presented.

The instructions made no distinction between the taking of the first 7 and the last 18 bags. The jury was not permitted to consider the purposes or the intention of defendant in taking the bags. The fact that the first 7 bags were submitted by defendant to plaintiff, and were in the latter's possession on the last examination, was ignored by these instructions. The jury was told that—

"They [defendant's servants] had no right to take a part, such part as might please them, for evidentiary purposes, or for any other purpose, and reject perfectly good bags. They either were their bags, or they were not, by their acceptance."

We think the record did not justify the court in taking the issue of acceptance from the jury. Springfield Engine Stop Co. v. Sharp, 184 Mass. 266, 68 N. E. 224; Bell v. Anderson, 74 Wis. 638, 43 N. W. 666; Philadelphia Whiting Co. v. Detroit White Lead Works, 58 Mich. 29, 24 N. W. 881; Okell v. Smith, 1 Stark. 86. This instruction was in substance equivalent to a directed verdict for the plaintiff, and, being erroneous, must result in a reversal.

The judgment is reversed, with costs, and the cause remanded for a new trial.